LUCERO, J.,
dissenting.
My respected colleagues in the majority conclude that 8 U.S.C. § 1229a is silent on the question of whether, subsequent to departure from the United States, an alien *1162 may file a motion to reconsider removability under § 1229a(c)(6)(A), or a motion to reopen removal proceedings under § 1229a(c)(7)(A). In addition, the majority holds that an Immigration Judge (“IJ”) lacks the power to sua sponte reconsider or reopen an alien’s case after an alien has departed from the United States. I disagree with both conclusions.
As to the first holding, as I read the statute, the pertinent provisions of § 1229a(c)(6)(A) and (7)(A) unambiguously guarantee every alien the right to file one motion to reconsider removability and one motion to reopen removal proceedings, regardless of whether the alien has departed from the United States. For this reason alone, I would invalidate the challenged portion of 8 C.F.R. § 1003.23(b)(1) under the first step of Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 842-43, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). The Supreme Court’s recent decision in Dada v. Mukasey, — U.S.-, 128 S.Ct. 2307, 171 L.Ed.2d 178 (2008), all but compels such invalidation. As to the second holding, the post-departure bar within § 1003.23(b)(1) is consistent with the language authorizing sua sponte reconsideration or reopening by an IJ. Because there is no conflict between these provisions, an IJ retains the authority to sua sponte reconsider or reopen a proceeding even following an alien’s departure from the United States.
Today’s majority ruling creates a circuit split,[1] rests on a dubious interpretation of § 1229a(c)(6)(A) and (7)(A), disregards the clear import of Dada, and imagines a conflict between two portions of the regulation before us when there is none.
I
Under Chevron, “If a court, employing traditional tools of statutory construction, ascertains that Congress had an intention on the precise question at issue, that intention is the law and must be given effect.” 467 U.S. at 843 n. 9,104 S.Ct. 2778. A plain reading of 8 U.S.C. § 1229a(c)(6)(A) and (7)(A) comfortably occupies all the space on the issue before us and leaves any potential for valid promulgation of the challenged portion of 8 C.F.R. § 1003.23(b)(1) outside in the bitter cold. As the Court said in Chevron, “If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress.” 467 U.S. at 842-43,104 S.Ct. 2778. If there be any doubt as to the plain reading of § 1229a(c)(6)(A) and (7)(A), Dada puts it to rest.
A
1
Section 1229a(c)(6)(A) provides, “The alien may file one motion to reconsider a decision that the alien is removable from the United States,” and § 1229a(c)(7)(A) provides, “An alien may file one motion to reopen proceedings under this section ....”[2] The language Congress chose is plain and unequivocal. It draws no distinction between aliens who are in the country and aliens who have departed. All aliens are treated alike under the terms of § 1229a(c)(6)(A) and (7)(A), and all aliens are guaranteed the right to file one motion to reconsider and one motion to reopen. William v. Gonzales, 499 F.3d 329, 332 *1163 (4th Cir.2007) (“We find that § 1229a(c)(7)(A) unambiguously provides an alien with the right to file one motion to reopen, regardless of whether he is within or without the country.”); see Azarte v. Ashcroft, 394 F.3d 1278, 1285-86 (9th Cir. 2005) (“With respect to motions to reopen ..., Congress’ language in IIRIRA is clear and unambiguous: ‘An alien may file one motion to reopen proceedings.’ ” (quoting § 1229a(c)(6)(A) (2004)) (footnote omitted)).[3] The post-departure bar, which prohibits departed aliens from filing a motion to reconsider or reopen, conflicts with this unambiguous statutory language. See 8 C.F.R. § 1003.23(b)(1).[4]
Despite this clear language, the majority concludes that § 1229a(c)(6)(A) and (7)(A) are silent on the question of whether a certain subclass of aliens — those who have departed the United States — may file one motion to reconsider and reopen. Maj. Op. at 1156. Surely this cannot be correct. Sections 1229a(c)(6)(A) and (7)(A) speak in absolute and unequivocal terms: “The alien may file one motion to reconsider,” § 1229a(c)(6)(A) (emphasis added), and “[a]n alien may file one motion to reopen,” § 1229a(c)(7)(A) (emphasis added). My colleagues conclude not that Congress was silent regarding which aliens may file motions, but rather, that Congress was silent regarding whether any subclass of aliens might nonetheless be excluded. Maj. Op. at 1156. Under the majority’s approach, Chevron would require that Congress expressly enumerate all that an agency cannot do before we may conclude that Congress “has directly spoken to the precise question at issue.” See 467 U.S. at 842, 104 S.Ct. 2778. The majority would thus preclude customary expression of Congressional intent by the use of expansive and inclusive permissions such as those in § 1229a(c)(6)(A) and (7)(A).
My colleagues’ reasoning conflicts with the thrust of Chevron: we are to initially look at the plain language of an act, and if there be any doubt, only then are we to look to the intent of Congress using additional tools of statutory construction. Id. at 843 n. 9, 104 S.Ct. 2778 (“If a court, employing traditional tools of statutory construction, ascertains that Congress had an intention on the precise question at issue, that intention is the law and must be given effect.”). On the issue before us, a plain reading of the text of the statute compels the conclusion that § 1229a(c)(6)(A) and (7)(A) unambiguously *1164 guarantee all aliens the right to file one motion to reconsider and one motion to reopen.
Before today, we have followed the dictates of Chevron, giving effect to the clear intent of Congress in determining whether a regulation is consistent with the governing act. For example, in Lee v. Gallup Auto Sales, Inc., we invalidated a regulation that exempted from the Odometer Act a subclass of motor vehicles which were neither explicitly nor implicitly exempted under the terms of the pertinent statute. 135 F.3d 1359, 1360-62 (10th Cir.1998). Under the terms of the Odometer Act, a transferor was required to disclose certain information whenever ownership of “a motor vehicle” was transferred. Id. at 1360 (quoting 15 U.S.C. § 1988(a) (1993) (current version at 49 U.S.C. § 32705 (2008))) (emphasis added). Nevertheless, the Secretary of Transportation promulgated a regulation exempting from the disclosure requirements those motor vehicles ten years old or older. Id. (citing 49 C.F.R. § 580.6(a)(3) (1993) (current version at 49 C.F.R. § 580.17(a)(3) (2008))). “Because the text of the Odometer Act d[id] not even suggest — much less explicitly state— a legislative intent to exempt entire classes of vehicles from the disclosure requirements of the Act,” we invalidated the regulation as contrary to the clear meaning of the statute. Id. at 1361 (quotation omitted); see also Suiter v. Mitchell Motor Coach Sales, Inc., 151 F.3d 1275, 1280-81 (10th Cir.1998) (invalidating a regulation that exempted from the disclosure requirements of the Odometer Act those vehicles with a gross vehicle weight rating in excess of 16,000 pounds because the Act was unambiguous in its failure to authorize such an exemption).
In this case, the language of § 1229a(c)(6)(A) and (7)(A) does not evince a congressional intent to exclude subclasses of aliens from the statutorily-guaranteed right to file one motion to reconsider and one motion to reopen. Quite to the contrary, inclusive terms “[t]he alien” and “[a]n alien” indicate a congressional intent that all aliens subject to a removal order are entitled to file such motions. Assuredly, the Attorney General cannot by regulation rewrite the Act to exempt an entire subclass of aliens when Congress itself chose not to authorize such an exemption. See Suiter, 151 F.3d at 1280-81; Lee, 135 F.3d at 1360-62.
2
Structurally, § 1229a reinforces my interpretation. Throughout § 1229a, Congress codified a number of limitations on an alien’s right to file for reconsideration or reopening. Those limitations are express and clear. See § 1229a(c)(6)(B) (motions to reconsider must be filed within 30 days of final removal order); § 1229a(c)(6)(C) (motions to reconsider must challenge errors of law or fact, rather than the exercise of discretion, and must be supported by pertinent authority); § 1229a(c)(7)(B) (motions to reopen must state new facts and be supported by evidentiary material); § 1229a(c)(7)(C) (motions to reopen must generally be filed within 90 days of final removal order). In doing so, Congress clearly considered the need to limit the filing of such motions and selected a precise scheme of time, number, and content restrictions.
Sections 1229a(c)(6)(A) and (7)(A) also include an express limitation: aliens are limited to one motion to reconsider and one motion to reopen.[5] In contrast, what *1165 § 1229a does not do is limit by geography the class of aliens eligible to file motions to reconsider and reopen. That Congress expressly included multiple limitations, but chose not to include another — one based on geography — presents a paradigmatic example of the canon of statutory construction expressio unius est exclusio alterius. See United States v. Brown, 529 F.3d 1260, 1265 (10th Cir.2008); see also United States v. Johnson, 529 U.S. 53, 58, 120 S.Ct. 1114, 146 L.Ed.2d 39 (2000) (“When Congress provides exceptions in a statute, it does not follow that courts have authority to create others. The proper inference ... is that Congress considered the issue of exceptions and, in the end, limited the statute to the ones set forth.”); United States v. Goldbaum, 879 F.2d 811, 813 (10th Cir.1989) (“As a general principle of statutory interpretation, if a statute specifies exceptions to its general application, other exceptions not explicitly mentioned are excluded.”).
This point is supported by another provision in the same statute. In § 1229a(c)(7)(C)(iv)(IV), Congress did include a geographic condition, exempting victims of domestic violence from the deadline for filing a motion to reopen “if the alien is physically present in the United States at the time of filing the motion.” 8 U.S.C. § 1229a(c)(7)(C)(iv)(IV) (emphasis added); see Sanchez v. Keisler, 505 F.3d 641, 642 (7th Cir.2007).[6] Obviously aware of the potential for such a distinction, Congress chose not to include similar language in § 1229a(c)(6)(A) and (7)(A). This textual contrast serves as a buttress to the conclusion that Congress did not intend to limit by geography the availability of motions to reconsider or reopen. Indeed, by concluding as it does that an alien must be in the United States to file any motion to reconsider or reopen, the majority would “render the physical presence requirement expressly written into subsection (c)(7)(C)(iv)(IV) mere surplusage.” William, 499 F.3d at 333.
Relying on the dissent in William, the majority advances two reasons to disregard the inference I draw from the existence of the physical presence requirement in § 1229a(c)(7)(C)(iv)(IV) and its conspicuous absence in § 1229a(c)(6)(A) and (7)(A). Maj. Op. at 1154-55; see William, 499 F.3d at 337-38 (Williams, J., dissenting). First, my colleagues note that the physical-presence requirement was added in 2006, see Violence Against Women and Department of Justice Reauthorization Act of 2005, Pub.L. No. 109-162, § 825, 119 Stat. 2960, 3063-64 (2006), and therefore infer that it sheds no light on what Congress intended when it enacted IIRIRA in 1996, see William, 499 F.3d at 337. Second, the majority agrees that “ § 1229a(c)(7)(C)(iv)(IV)’s physical-presence requirement is not coextensive with the regulatory departure bar.” Id.
The majority’s first argument is wrong on two counts. As an initial matter, whether particular language in the statute was added in 1996 or 2006, we must still read the statute as a whole. TRW Inc. v. Andrews, 534 U.S. 19, 31, 122 S.Ct. 441, 151 L.Ed.2d 339 (2001) (“It is a cardinal principle of statutory construction that a statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant.” (quotations omitted)); Bridger Coal Co./Pac. Minerals, Inc., v. Dir., Office of Workers’ Comp. *1166 Programs, 927 F.2d 1150, 1153 (10th Cir. 1991) (“We will not construe a statute in a way that renders words or phrases meaningless, redundant, or superfluous.”). If physical presence in the United States were already required of aliens before they filed a motion to reconsider or reopen under § 1229a(c)(6)(A) and (7)(A), the “physically present” language in § 1229a(c)(7)(C)(iv)(IV) would be entirely superfluous.
Second, it is equally probable that Congress included the “physically present” language in 2006 precisely because § 1229a(c)(6)(A) and (7)(A) contain no such requirement. In other words, Congress in 2006 understood perfectly well what it had done in 1996: all aliens, whether or not physically present in the United States, were granted the right to file one motion to reconsider and one motion to reopen. Congress also imposed a strict time limit— a limit it then chose to lift in 2006 for qualifying victims of domestic violence filing a motion to reopen while physically present in the United States. § 1229a(c) (7) (C)(iv)(IV); see William, 499 F.3d at 333 (majority op.) (“Congress knew how to include a requirement of physical presence when it wished to do so, as it did in § 1229a(c)(7)(C)(iv)(IV).”).
We are offered a second explanation for rejecting the logical inference which should be drawn from the “physically present” language: the 8 U.S.C. § 1229a(c)(7)(C)(iv)(IV) requirement could be read as different in scope from the 8 C.F.R. § 1003.23(b)(1) post-departure bar. My majority colleagues embrace the thinking of the William dissent:
[0]ne can reasonably understand § 1229a(c)(7)(C)(iv)(IV) to mean that as long as the qualifying alien files a motion to reopen before departing the country, the alien’s subsequent departure from the United States has no effect on the BIA’s ability to hear the motion, which is a decidedly different result than would obtain under the [post-]departure bar.
William, 499 F.3d at 337-38 (Williams, J., dissenting).
In choosing the position of the William dissent, the majority concludes that Congress intended to benefit qualifying aliens by allowing the BIA to consider a motion to reopen even after those aliens have departed from the United States, whereas all other aliens would forfeit such motions by departing under the terms of the bar. But this interpretation is incompatible with the next portion of the same statutory subsection. In addition to excepting domestic violence victims from certain time limitations “if the alien is physically present in the United States at the time of filing the motion,” § 1229a(c)(7)(C)(iv) continues:
The filing of a motion to reopen under this clause shall only stay the removal of a qualified alien ... pending the final disposition of the motion, including exhaustion of all appeals if the motion establishes that the alien is a qualified alien.
Thus, removal from the United States of a qualifying domestic violence victim is stayed pending the resolution of the victim’s motion to reopen. For a stay of removal to have teeth, the alien must be “physically present” in the United States. Once removal of a qualifying alien is stayed, the alien will presumably remain in the United States.[7] And if the alien re *1167 mains in the United States, the post-departure bar will never be implicated. Thus, it simply cannot be correct that the “physically present” language in § 1229a(c)(7)(C)(iv)(IV) “carvfes] out a limited exception to the general working of the [post-]departure bar.” William, 499 F.3d at 337. The post-departure bar does not come into play when removal of a qualifying alien has been stayed.
3
The history of IIRIRA further supports a plain text reading of § 1229a(c)(6)(A) and (7)(A). Until 1996, there existed by statute a post-departure bar to judicial review of deportation orders. 8 U.S.C. § 1105a(c) (1995) (“An order of deportation or of exclusion shall not be reviewed by any court if the alien ... has departed, from the United States after the issuance of the order.” (emphasis added) (repealed 1996)). Moreover, motions to reconsider and reopen were entirely creatures of regulation until 1996. William, 499 F.3d at 330 (majority op.); Azarte, 394 F.3d at 1283. In line with the statutory post-departure bar to judicial review, the Code of Federal Regulations provided at the time that “[a] motion to reopen or a motion to reconsider shall not be made by or in behalf of a person who is the subject of deportation proceedings subsequent to his departure from the United States.” 8 C.F.R. § 3.2 (1995) (current versions at § 1003.2(d) (2008), governing motions before the BIA, and § 1003.23(b)(1) (2008), governing motions before an IJ). When Congress enacted IIRIRA in 1996, the statutory scheme changed substantially.
On point, IIRIRA accomplished two significant goals. First, the Act repealed § 1105a(c) and granted circuit courts jurisdiction to review orders of removal. William, 499 F.3d at 330; see IIRIRA, Pub.L. No. 104-208, div. C, § 306, 110 Stat. 3009-546, 3009-607 to 612 (1996) (codified as amended at 8 U.S.C. § 1252); 8 U.S.C. § 1252(a)(5). Second, the Act codified the statutory right of all aliens to file one motion to reconsider and one motion to reopen. William, 499 F.3d at 330; see 8 U.S.C. § 1229a(c)(6)(A) & (7)(A).
Again we are driven to one conclusion: Congress knew how to codify a post-departure bar when it so elected. Such a bar prohibited all judicial review until 1996. That Congress chose not to include a post-departure bar to the filing of motions to reconsider and reopen when it enacted § 1229a(c)(6)(A) and (7)(A) demonstrates that Congress did not intend to authorize such a limitation.
4
At bottom, the government’s argument in support of the validity of the post-departure bar amounts to this: prohibiting departed aliens from filing motions to reconsider or reopen is good policy. In its brief, the government fails to engage in a Chevron analysis and devotes itself almost entirely to defending the efficiency of the post-departure bar. According to the government, the regulatory bar is consistent with the Congress’s purpose in passing IIRIRA — “to make it easier to deny admission to inadmissible aliens and easier to remove deportable aliens from the United States.” H.R.Rep. No. 104-469, pt. 1, at 157 (1996). Invalidating the post-departure bar, the government tells us, would be inconsistent with this congressional purpose.
As an initial matter, the government’s policy argument presents a non-sequitur. Merely because the post-departure bar may be consistent with the broad purpose of the IIRIRA, it does not follow that invalidating the regulation is inconsistent with that purpose. Even were we to as *1168 sume that the sole purpose of the IIRIRA is to facilitate removal of deportable aliens, the interpretation of § 1229a(c)(6)(A) and (7)(A) advanced by this dissent is fully consistent with that goal.[8] Facially, these sections “make it easier to remove deport-able aliens” because aliens are limited to one motion to reconsider and one motion to reopen within an express time limitation. As discussed, Congress was attentive to the need to limit motions to reconsider and reopen, but chose an approach different from that promulgated by the Attorney General in § 1003.23(b)(1). Because a departed alien seeking to file a motion to reconsider or reopen has already left the United States, the alien cannot use these motions as a means of delaying removal.
As with an inconsistent regulation, when the meaning of a statute is plain and clear, there is no room left in the interpretive equation for policy arguments and they too must be left outside in the unsheltered cold. “When the words of a statute are unambiguous, ... this first canon is also the last: judicial inquiry is complete.” Conn. Nat'l Bank. v. Germain, 503 U.S. 249, 254, 112 S.Ct. 1146, 117 L.Ed.2d 391 (1992) (quotation omitted). What we wrote in Lee is equally applicable here: “There may be good policy reasons for exempting” departed aliens from § 1229a(c)(6)(A) and (7)(A), “but that determination is legislative in nature and is properly made by Congress, and not by regulatory fiat.” See Lee, 135 F.3d at 1361 (quotation omitted).
B
The Supreme Court’s recent decision in Dada v. Mukasey, — U.S.-, 128 S.Ct. 2307, 171 L.Ed.2d 178 (2008), further supports the conclusion that the post-departure bar is inconsistent with § 1229a(c)(6)(A) and (7)(A). In Dada, the Court held that all aliens have a “statutory right” to file one motion to reopen, writing “the statutory text [of § 1229a(e)(7)(A) ] is plain insofar as it guarantees to each alien the right to file ‘one motion to reopen proceedings.’” 128 S.Ct. at 2316, 2317. The Court then relied upon this conclusion to interpret 8 C.F.R. § 1003.2(d), which is functionally identical to the relevant portion of § 1003.23(b)(1) and provides that an alien’s departure from the United States effects a withdrawal of his motion to reopen. Given the unambiguous congressional command of § 1229a(c)(7)(A) that each alien may file one motion to reopen, the Court reasoned that an alien must be permitted to withdraw consent to voluntary departure if necessary to “safeguard the right to pursue” the statutorily-guaranteed motion.[9] Id. at 2319. Otherwise, an alien agreeing to voluntarily depart would face a Catch-22 situation incompatible with the clear statutory text. Either the alien would have to depart the United States and his motion to reopen would be deemed withdrawn, or the alien could re *1169 main in the United States in order to obtain a ruling on the motion, thus staying beyond the voluntary departure period and risking the loss of eligibility for a potential adjustment of status. This, of course, is the very relief being sought through the motion to reopen. Id. at 2318. The Court pointedly noted that Dada had not challenged the validity of the underlying rule that deems a motion to reopen withdrawn if the alien leaves the United States. Id. at 2320. The validity of § 1003.2(d) was therefore not at issue in Dado, but the validity of closely analogous § 1003.23(b)(1) is squarely before us today.
Notably, the Dada Court held that withdrawal of consent to voluntary departure must be permitted precisely because § 1229a(c)(7)(A) is clear and unambiguous: an alien must be allowed to file one motion to reopen. 128 S.Ct. at 2316. In rejecting the government’s contrary position — that an alien is not entitled to pursue a § 1229a(e)(7)(A) motion following a voluntary departure — the Court reasoned that “[i]t would render the statutory right to seek reopening a nullity in most eases of voluntary departure.” Id. at 2317 (emphasis added). But one inescapable conclusion can be drawn from that language: an alien cannot be forced by regulation to forfeit a motion guaranteed by statute.
The logic of Dada applies with equal force to the case before us. Just as the language of § 1229a(c)(7)(A) is plain, see Dado, 128 S.Ct. at 2316, the language of § 1229a(c)(6)(A) is equally plain: all aliens have the right to file one motion to reconsider regardless of whether they have departed from the United States. As in Dada, Rosillo-Puga cannot be forced by regulation to forfeit the right to file one motion to reconsider and one motion to reopen. Because § 1003.23(b)(1) accomplishes exactly that forbidden result, that regulation cannot stand. See Costello v. INS, 376 U.S. 120, 127-28, 84 S.Ct. 580, 11 L.Ed.2d 559 (1967) (“[Courts should] hesitate long before adopting a construction of [a statute] which would, with respect to an entire class of aliens, completely nullify a procedure so intrinsic a part of the legislative scheme.”).[10]
C
My colleagues offer a final reason to deny Rosillo-Puga’s appeal: His motion was untimely. It is well established, however, that “[t]he grounds upon which an administrative order must be judged are those upon which the record discloses that its action was based.” SEC v. Chenery Corp., 318 U.S. 80, 87, 63 S.Ct. 454, 87 L.Ed. 626 (1943); see also Motor Vehicle Mfrs. Ass’n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co., 463 U.S. 29, 50, 103 S.Ct. 2856, 77 L.Ed.2d 443 (1983) (“[A]n agency’s action must be upheld, if at all, on *1170 the basis articulated by the agency itself.”); Cherokee Nation of Okla. v. Norton, 389 F.3d 1074, 1078 (10th Cir.2004); Utahns for Better Transp. v. U.S. Dep’t of Transp., 305 F.3d 1152, 1165 (10th Cir. 2002). Neither the IJ nor the BIA based its dismissal of Rosillo-Puga’s motion on timeliness. My colleagues offer no reason to depart from the general rule of Chenery. We thus may not uphold the BIA’s decision on the ground of untimeliness.[11]
II
Although I would invalidate the challenged portion of § 1003.23(b)(1), I note briefly my further disagreement with the majority’s conclusion that an IJ lacks sua sponte authority to reconsider or reopen a removal proceeding after an alien has departed the United States. Maj. Op. at 1159-60. My colleagues reach this conclusion by invoking the “canon of statutory construction that, when there is an apparent conflict between a specific provision and a more general one, the more specific one governs.” Shawnee Tribe v. United States, 423 F.3d 1204, 1213 (10th Cir.2005) (quotation omitted). In their view, the specific provision in § 1003.23(b)(1) that prohibits a departed alien from filing a motion to reconsider or reopen “subsequent to his or her departure from the United States” trumps the general provision authorizing an “Immigration Judge upon his or her own motion at any time, ... [to] reopen or reconsider any case in which he or she has made a decision.” 8 C.F.R. § 1003.23(b)(1).[12]
Contrary to the majority’s view, there is simply no conflict between these two provisions. One speaks to the authority of the IJ, the other to the rights of aliens. The general provision in the regulation allows an IJ “at any time” to reopen or reconsider a case. The post-departure bar, by contrast, says nothing about the power of an IJ. Rather, it provides that “A motion to reopen or to reconsider shall not be made by ... a person ... subsequent to his or her departure from the United States.” Under a proper reading of § 1003.23(b)(1), although an alien may not move for reconsideration or reopening following departure, an IJ always retains the discretionary authority to sua sponte reopen or reconsider a case.[13]
*1171 III
For the foregoing the reasons, I would strike down the challenged portion of 8 C.F.R. § 1003.23(b)(1) under the first step of Chevron.[14] I consider it unnecessary for us to reach the sua sponte authority of an IJ to reconsider or reopen Rosillo-Puga’s case, but were we to reach the issue, I would conclude that the IJ does possess such authority. The majority having concluded otherwise on both counts, I respectfully dissent.

. Specifically, the majority's holding regarding the validity of 8 C.F.R. § 1003.23(b)(1) squarely conflicts with the conclusion reached by the Fourth Circuit in William v. Gonzales, 499 F.3d 329, 334 (4th Cir.2007).

. These sections were added as part of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("HRIRA” or the "Act"), Pub.L. No. 104-208, div. C, § 304, 110 Stat. 3009-546, 3009-593 (1996).

. At the time of the Ninth Circuit’s decision in Azarte, motions to reconsider were governed by § 1229a(c)(5) and motions to reopen were governed by § 1229a(c)(6). In 2005, Congress amended § 1229a, redesignating subsection (c)(5) as (c)(6) and (c)(6) as (c)(7). See Real ID Act of 2005, Pub.L. No. 109-13, div. B, § 101(d)(1), 119 Stat. 302, 304 (2005).

. The regulation setting forth the post-departure bar provides:
An Immigration Judge may upon his or her own motion at any time, or upon motion of the Service or the alien, reopen or reconsider any case in which he or she has made a decision, unless jurisdiction is vested with the Board of Immigration Appeals---- A motion to reopen or to reconsider shall not be made by or on behalf of a person who is the subject of removal, deportation, or exclusion proceedings subsequent to his or her departure from the United States. Any departure from the United States, including the deportation or removal of a person who is the subject of exclusion, deportation, or removal proceedings, occurring after the filing of a motion to reopen or a motion to reconsider shall constitute a withdrawal of such motion.
8 C.F.R. § 1003.23(b)(1) (emphasis added). It is the emphasized portion of this section that Rosillo-Puga has challenged, and that I refer to throughout as “the post-departure bar.”
A parallel regulation, which applies to the Board of Immigration Appeals ("BIA”) rather than to IJs, appears at 8 C.F.R. § 1003.2. In William, the Fourth Circuit invalidated the post-departure bar contained in § 1003.2(d). 499 F.3d at 334.

. The House Report accompanying the passage of IIRIRA shows that Congress considered § 1229a(c)(6)(A) and (7)(A) to embody an important limit on an alien's right to file motions to reconsider and reopen: "Aliens are limited to a single motion to reconsider and a single motion to reopen removal proceedings.” H.R.Rep. No. 104-469, pt. 1, at 159 (1996).

. Imposing a "physical presence” requirement on aliens who seek to invoke the § 1229a(c)(7)(C)(iv) "special rule for battered spouses, children, and parents,” but not on other aliens, is only logical. This rule was enacted to protect aliens who have "been battered or subjected to extreme cruelty in the United States ” in connection with their need for immigration benefits. 8 U.S.C. § 1641(c)(1)(A) (emphasis added).

. Even if an alien agreed to voluntary departure, Dada allows the alien to withdraw consent to voluntary departure and remain in the United States. 128 S.Ct. at 2319; see infra Part I.B. The majority’s interpretation would thus operate to protect the rare individual who, notwithstanding the stay of removal, chose to leave the country. It hardly seems likely that this subgroup of aliens, should such a subgroup exist, was the object of Con *1167 gress's concern and motivated the inclusion of§ 1229a(c)(7)(C)(iv)(IV).

. Moreover, simply because a statute is generally intended to facilitate enforcement does not mean that every provision therein must be interpreted to maximally benefit the government and disadvantage the regulated individual. If that were Congress’s intent, there would be little reason to allow motions to reconsider or reopen at all.

. Voluntary departure is a statutory process by which certain aliens can leave the countiy willingly within a prescribed time frame. Dada, 128 S.Ct. at 2312. In exchange for saving the government the expense and burden of deportation, the alien avoids prolonged detention, chooses the country of destination, and facilitates the possibility of readmission. Id. at 2314. "Voluntary departure serves the practical goals of reducing the costs associated with deporting individuals from the United States and providing a mechanism for illegal aliens to leave the country without being subject to the stigma or bars to future relief that are part of the sanction of deportation.” Azarte, 394 F.3d at 1284.

. The majority’s attempt is distinguish Dada is unpersuasive. My colleagues read Dada as affirming the validity of § 1003.23(b)(1). Maj. Op. at 1153 n. 3 ("The very problem identified by the Supreme Court in Dada would not exist but for the validity of the regulation challenged here.”). In fact, the Court necessarily assumed the validity of § 1003.23(b)(1), just as it assumed the validity of § 1003.2(d). This is entirely unremarkable, as neither regulation was challenged before the Court. See Dada, 128 S.Ct. at 2320 ("This regulation, however, has not been challenged in these proceedings, and we do not consider it here.”). Moreover, the majority places undue reliance on the BIA’s decision in Matter of Armendarez-Mendez, 24 I & N Dec. 646, 655-56 & n. 7 (2008). This court owes no deference to an agency’s interpretation of a Supreme Court decision. Nor do we defer to an agency's interpretation of an unambiguous statute. Chevron, 467 U.S. at 842-43, 104 S.Ct. 2778 ("If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress.”).

. This circuit has already determined that the ninety-day statutory deadline for filing a motion to reopen may be tolled. See Riley v. INS, 310 F.3d 1253, 1257-58 (10th Cir.2002). Accordingly, it is not a jurisdictional limit and should not be raised sua sponte. Other circuits are in accord. See Socop-Gonzalez v. INS, 272 F.3d 1176, 1190-93 (9th Cir.2001) (en banc); Iavorski v. INS, 232 F.3d 124, 130-34 (2d Cir.2000). My colleagues apparently assume that the filing deadline contained in § 1229a(c)(6)(B) is similarly not a jurisdictional restriction. Cf. Pervaiz v. Gonzales, 405 F.3d 488, 490 (7th Cir.2005) (holding that the 180-day filing deadline applicable to motions to reopen from removal orders filed in absentia is not jurisdictional); Borges v. Gonzales, 402 F.3d 398, 405-06 (3d Cir.2005);(same); Lopez v. INS, 184 F.3d 1097, 1098 (9th Cir. 1999) (same). But see Anin v. Reno, 188 F.3d 1273, 1278 (11th Cir.1999) (holding that the 180-day filing deadline is "jurisdictional and mandatory”).

. The majority also notes in passing that "we do not have jurisdiction to consider petitioner's claim that the [IJ] should have sua sponte reopened the proceedings under [8 C.F.R. § 1003.23(b)(1) ] because there are no standards by which to judge the agency’s exercise of discretion.” Maj. Op. at 1160 (quotation omitted). Although that may be true, it has no relevance to this case. Here, the IJ did not exercise his discretion not to reconsider or reopen. Quite the contrary, the IJ concluded as a legal matter that he lacked discretion entirely, given the post-departure bar. That legal conclusion is reviewable by this court, see 8 U.S.C. § 1252(a)(2), and it is erroneous. See infra.

. On point, the BIA is of the view that it can reconsider or reopen a case sua sponte in "exceptional circumstances” pursuant to 8 C.F.R. § 1003.2 which, as noted, is functionally identical to the regulation at issue here, *1171 except that it applies to the BIA rather than to the IJ. See, e.g., In re J-J, 21 I & N Dec. 976, 984 (1997) (citing 8 C.F.R. § 3.2(a) (1997)) (current version at 8 C.F.R. § 1003.2(a) (1998)); see also Maj. Op. at 1160 n. 7.

. Assuming the challenged portion of § 1003.23(b)(1) is valid, I agree that the regulation applies to Rosillo-Puga, that it is not arbitrary or capricious as applied, and that it does not violate due process.