Petition for review granted; order vacated by published opinion. Judge SHEDD wrote the majority opinion, in which Judge MICHAEL joined. Chief Judge WILLIAMS wrote a dissenting opinion.
OPINION
SHEDD, Circuit Judge:
Tunbosun Olawale William petitions for review of an order of the Board of Immigration Appeals (“BIA”) holding that it could not consider his motion to reopen immigration proceedings which was filed after he had been removed from the United States. In reaching this conclusion, the BIA relied on 8 C.F.R. § 1003.2(d). Because we conclude that this regulation conflicts with clear statutory language and is therefore invalid, we grant the petition for review, vacate the order of the BIA, and remand for further proceedings.
I
Since 1962, aliens involved in immigration proceedings have been able to file motions to reopen those proceedings before the BIA. Initially, motions to reopen were creatures solely of regulation. Medinar-Morales v. Ashcroft, 371 F.3d 520, 528 (9th Cir.2004) (“Until ... 1996, [tjhere [was] no statutory provision for reopening of a deportation proceeding, and the authority for such motions derive[d] solely from regulations promulgated by the Attorney General.”) (internal punctuation omitted) (alteration in original). As part of this regulatory scheme, 8 C.F.R. § 3.2 (predecessor to 8 C.F.R. § 1003.2(d)) provided:.
[A] motion to reopen or a motion to reconsider shall not be made by or on behalf of a person who is the subject of deportation proceedings subsequent to his departure from the United States. Any departure from the United States of a person who is the subject of deportation proceedings occurring after the making of a motion to reopen or a motion to reconsider shall constitute a withdrawal of such motion.
This regulation largely paralleled a statutory provision, 8 U.S.C. § 1105a(c) (1962), which barred the federal courts from exercising jurisdiction over immigration orders when the alien had departed the country.
In 1996, Congress made major changes to immigration law through the enactment of the Illegal Immigration Reform and Immigrant Responsibility Act (“IIRIRA”), Pub.L. No. 104-208,110 Stat. 3009. Among other things, IIRIRA (1) repealed the statutory bar to judicial review of deportation orders when the alien had departed the country and (2) codified and enacted procedures governing the filing of motions to reopen. Specifically, in codifying motions to reopen, Congress provided: “An alien may file one motion to reopen proceedings under this section....” 8 U.S.C. § 1229a(c)(7)(A) (originally designated 8 U.S.C. § 1229a(c)(6)(A)). Congress then proceeded to detail the required content of a motion to reopen, the deadline for filing the motion, and exceptions from both the numerical limit of one motion and the time period for filing the motion. § 1229a(c)(7)(A)-(C).
After Congress’ codification of the motion to reopen in IIRIRA, the Attorney General repromulgated, in essentially the same form, the regulation imposing the *331 bar to BIA review of motions to reopen when an alien has departed the country:
A motion to reopen or a motion to reconsider shall not be made by or on behalf of a person who is the subject of exclusion, deportation, or removal proceedings subsequent to his or her departure from the United States. Any departure from the United States, including the deportation or removal of a person who is the subject of exclusion, deportation, or removal proceedings, occurring after the filing of a motion to reopen or a motion to reconsider, shall constitute a withdrawal of such motion.
8 C.F.R. § 3.2 (later redesignated 8 C.F.R. § 1003.2(d)); see 62 Fed.Reg. 10312, 10321, 10331 (Mar. 6, 1997), 68 Fed. Reg. 9824 (Feb. 28, 2003). The validity of this regulation and its application to William are at issue in this case.
II
William is a native and citizen of Nigeria who became a permanent legal resident of the United States in 1996. In June 1997, William pled guilty to receipt of a stolen credit card in violation of Maryland law. William was sentenced to eighteen months imprisonment, with nine months suspended, and three years probation.
On November 28, 1997, the Immigration and Naturalization Service (“INS”) charged William with being removable as an aggravated felon for committing an offense involving fraud or deceit in which the loss to the victim exceeds $10,000. See 8 U.S.C. §§ 1101(a)(43)(M), 1227(a)(2)(A)(iii). Subsequently, the INS also charged William with being removable as having committed a crime of moral turpitude. See 8 U.S.C. § 1227(a)(2)(A)®. During subsequent proceedings, an immigration judge found William removable as having been convicted of a crime of moral turpitude and found him ineligible for relief. The BIA affirmed this decision, and William did not seek further review in this court. William then filed with the BIA a motion to reconsider, arguing that he had received limited post-conviction relief in the form of a reduction of sentence. The BIA denied this motion and, again, William did not pursue further review.
On July 11, 2005, William was removed from the United States. Shortly thereafter, William filed a petition for a writ of coram nobis in state court seeking to vacate his Maryland conviction. The state court granted the writ and vacated William’s conviction in October 2005. On December 21, 2005, William filed a motion to reopen immigration proceedings before the BIA in which he asserted that the exceptional circumstances of his case warranted reconsideration of his removal. The BIA refused to consider William’s motion to reopen — thereby effectively denying it on procedural grounds — reasoning that William had already been removed from the United States and, in those circumstances, 8 C.F.R. § 1003.2(d) bars the filing of a motion to reopen. This petition for review followed.
Ill
William argues that 8 C.F.R. § 1003.2(d), containing the post-departure bar on motions to reopen, is invalid because it conflicts with clear statutory language. Where the validity of an agency’s regulation is called into question, we employ the familiar analysis prescribed by Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). Accordingly, we first consider whether “Congress has directly spoken to the precise question” at issue. Id. at 842, 104 S.Ct. 2778. If Congress has so spoken, our inquiry is at an end, for we, as well as *332 the agency, “must give effect to the unam-. biguously expressed intent of Congress.” Id. at 843, 104 S.Ct. 2778. However, if Congress has not addressed the precise question at issue, we must determine whether the agency’s interpretation of the statute in question, as embodied in its regulation, is reasonable and therefore entitled to deference. Id.
The statutory provision in question is 8 U.S.C. § 1229a(c)(7)(A), which provides that “[a]n alien may file one motion to reopen proceedings under this section .... ” William contends that this statute does not differentiate between an alien who is in the United States and one who is abroad and that it permits either to file one motion to reopen proceedings. On the other hand, the Government maintains that § 1229a(c)(7)(A) is silent with respect to post-departure motions to reopen in that it does not specifically address them. The Government therefore reads the statute as leaving a gap which it may fill with a regulation restricting the availability of motions to reopen to those aliens who remain in the United States.[1]
We find that § 1229a(c)(7)(A) unambiguously provides an alien with the right to file one motion to reopen, regardless of whether he is within or without the country. This is so because, in providing that “an alien may file,” the statute does not distinguish between those aliens abroad and those within the country — both fall within the class denominated by the words “an alien.” Because the statute sweeps broadly in this reference to “an alien,” it need be no more specific to encompass within its terms those aliens who are abroad. Thus, the Government’s view that Congress was silent as to the ability of aliens outside the United States to file motions to reopen is foreclosed by the text of the statute.[2] The statutory language does speak to the filing of motions to reopen by aliens outside the country; it does so because they are a subset of the group (ie. “alien[s]”) which it vests with the right to file these motions. Accordingly, the Government’s view of § 1229a(c)(7)(A) simply does not comport with its text and cannot be accommodated absent a rewriting of its terms.[3]
*333 The overall structure of § 1229a reenforces our reading of § 1229a(e)(7)(A) in two ways. First, the fact that Congress provided for specific limitations on the right to file a motion to reopen bolsters the conclusion that § 1229a(c)(7)(A) cannot be read to except from its terms those aliens who have departed the country. See United States v. Johnson, 529 U.S. 53, 58, 120 S.Ct. 1114, 146 L.Ed.2d 39 (2000) (“When Congress provides exceptions in a statute, it does not follow that courts have authority to create others. The proper inference ... is that Congress considered the issue of exceptions and, in the end, limited the statute to the ones set forth.”). Second, and more importantly, in detailing the time limit for a motion to reopen, Congress provided that the usual 90-day limit does not apply where an alien who is applying for relief from removal as a victim of domestic violence “is physically present in the United States at the time of filing the motion.” 8 U.S.C. § 1229a(c)(7)(C)(iv)(IV) (emphasis added). Of course, Congress did not include this requirement of physical presence in § 1229a(c)(7)(A), which deals with motions to reopen in general and which is applicable here. This being the case, we must draw a “negative inference” from Congress’ exclusion of the physical presence requirement from the statutory section under consideration, Hamdan v. Rumsfeld, —• U.S.-, 126 S.Ct. 2749, 2765, 165 L.Ed.2d 723 (2006), because where Congress “includes particular language in one section of a statute but omits it in another section of the same Act ... it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion,” Clay v. United States, 537 U.S. 522, 528, 123 S.Ct. 1072, 155 L.Ed.2d 88 (2003). Moreover, we can go beyond simply drawing an inference regarding Congress’ intent in this case, for a finding that physical presence in the United States is required before any motion to reopen may be filed would render the physical presence requirement expressly written into subsection (c)(7)(C)(iv)(IV) mere surplusage. See, e.g., TRW, Inc. v. Andrews, 534 U.S. 19, 31, 122 S.Ct. 441, 151 L.Ed.2d 339 (2001) (“It is a cardinal principle of statutory construction that a statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant.”) (internal punctuation omitted). In sum, Congress knew how to include a requirement of physical presence when it wished to do so, as it did in § 1229a(c)(7)(C)(iv)(IV). That it did not do so in the general provisions of § 1229a(c)(7)(A) leads us to conclude that Congress did not make presence in the United States a prerequisite to filing a motion to reopen.
For these reasons, § 1229a(c)(7)(A) clearly and unambiguously grants an alien the right to file one motion to reopen, regardless of whether he is present in the United States when the motion is filed. Therefore, our inquiry into Congress’ intent is at an end, for “[i]f the language is plain and the statutory scheme is coherent and consistent, we need not inquire further.” In re Coleman, 426 F.3d 719, 725 (4th Cir.2005) (internal citation omitted). Our sole function “is to enforce [the statute] according to its terms.” Id. (alteration in original).[4]
*334 Having set forth the clear meaning of § 1229a(c)(7)(A), we believe it is evident that 8 C.F.R. § 1003.2(d), containing the post-departure bar on motions to reopen, conflicts with the statute by restricting the availability of motions to reopen to those aliens who remain in the United States. Therefore, we conclude that this regulation lacks authority and is invalid. Allen v. United States, 173 F.3d 533, 536 (4th Cir. 1999) (“[W]e must overturn a regulation that clearly conflicts with the plain text of the statute.”). On remand, the BIA cannot rely on 8 C.F.R. § 1003.2(d) in refusing to consider William’s motion to reopen.[5]
IV
Based on the foregoing, we grant the petition for review, vacate the order of the BIA, and remand for further proceedings consistent with this opinion.

PETITION FOR REVIEW GRANTED; ORDER VACATED

.The Government cites Pena-Muriel v. Gonzales, 489 F.3d 438 (1st Cir.2007), recently decided by the First Circuit, in support of its argument in this case. Pena-Muriel, however, is of limited relevance here because the First Circuit did not address the primary argument made by William: i.e. that the regulation barring post-departure motions to reopen conflicts with the clear language of § 1229a(c)(7)(A). Instead, the First Circuit, and apparently Pena-Muriel, focused on whether Congress' repeal of § 1105a(c) removed the statutory basis for the regulatory bar on post-departure motions to reopen. See Pena-Muriel, 489 F.3d at 441 ("Pena-Muriel argues that the deletion of § 1105a(c) invalidated [the regulatory bar on post-departure motions to reopen]”); id. ("The parties point to no statutory language that explicitly addresses tire issue [of whether Congress intended to repeal the regulatory bar].”). We thus decide this case on an issue which is separate and distinct from that considered by the First Circuit.

. The clarity and breadth of the statutory language likewise overcome the Government's argument that, in enacting § 1229a(c)(7)(A), Congress codified the right to file a motion to reopen while leaving the regulatory post-departure bar in place by not expressly repealing it. Congress unambiguously addressed, and at least implicitly repealed, the regulatory post-departure bar by granting "an alien” the right to file one motion to reopen.

. The Government's position also lacks contextual support, for one of IIRIRA's aims is to expedite the removal of aliens from the country while permitting them to continue to seek review of their removal orders from abroad. See Ngarurih v. Ashcroft, 371 F.3d 182, 192 (4th Cir.2004) (noting that departure from the country no longer "purport[s] to cut off appel *333 late jurisdiction”); IIRIRA § 306(b) (repealing former statutory bar to post-departure judicial review).

. The test for whether a word or phrase used in a statute is ambiguous is not whether we can craft a more artful or articulate statute, which we possibly could do in many cases. Instead, the test is whether the statute's text, on its face, is “reasonably susceptible to multiple meanings.” Holland v. Big River Minerals Carp., 181 F.3d 597, 603 (4th Cir.1999). *334 Here, the statute refers to "an alien,” and there is simply no other statutory language or statutory context which supports reading this to mean "some aliens.” The dissent fails to explain how the text itself allows for multiple meanings. Instead, it references the statute’s legislative and administrative history, not to resolve an ambiguity, but to create one in the face of clear statutory language. See BedRoc Ltd., LLC v. United States, 541 U.S. 176, 187 n. 8, 124 S.Ct. 1587, 158 L.Ed.2d 338 (2004) ("[LJongstanding precedents ... permit resort to legislative history only when necessary to interpret ambiguous statutory text.”).

. Of course, we express no view on the merits of William’s motion to reopen. Likewise, we do not consider the Government’s argument that we would have no jurisdiction to review the BIA’s adjudication of the merits of William’s motion because that determination is committed to the discretion of the BIA. As the BIA has not ruled on the merits of William’s motion, this argument is hypothetical and not properly before us at this time. Moreover, the Government does not argue that a remand to the BIA would be futile because of a procedural or other defect in William’s motion or that the BIA would necessarily refuse to exercise its discretion to reopen proceedings. In fact, at oral argument, the Government noted that none of the statutory or regulatory limitations (other than 8 C.F.R. § 1003.2(d)) is currently at issue.