**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 11-2763
_____

AMBULANCE ASSOCIATION OF PENNSYLVANIA, a Pennsylvania non-profit
corporation; CITY OF PITTSBURGH, BUREAU OF EMERGENCY MEDICAL
SERVICES; MONESSEN AMBULANCE SERVICE, a Pennsylvania non-profit
corporation doing business as MON VALLEY EMERGENCY MEDICAL
SERVICES; ROBINSON EMS; GOODWILL HOSE COMPANY
AMBULANCE ASSOCIATION, a Pennsylvania non-profit corporation ;
LANCASTER EMS ASSOCIATION; UNITED HOOK & LADDER CO. #33 a
Pennsylvania non-profit corporation formerly known as NEW OXFORD
COMMUNITY FIRE COMPANY; PENN TOWNSHIP VOLUNTEER
EMERGENCY SERVICES, INC., a Pennsylvania non-profit corporation;
TREMONT AREA AMBULANCE ASSOCIATION, a Pennsylvania non-profit
corporation; VALLEY AMBULANCE AUTHORITY, a Pennsylvania municipal
authority; YOE FIRE COMPANY AMBULANCE SERVICE, INC., a
Pennsylvania non-profit corporation; NORTHWEST EMS, INC., a Pennsylvania
non-profit corporation; PENNSYLVANIA MEDICAL TRANSPORT, INC., a
Pennsylvania corporation; LACKAWANNA AMBULANCE INC., a
Pennsylvania non-profit corporation; BURHOLME FIRST AID CORPS, a
Pennsylvania non-profit corporation; THE NANTICOKE FIRE DEPARTMENT
COMMUNITY AMBULANCE, a Pennsylvania non-profit corporation,
SUSQUEHANNA VALLEY EMERGENCY MEDICAL SERVICES, a
Pennsylvania non-profit corporation,

Appellants

v.

HIGHMARK, INC., a Pennsylvania non-profit corporation doing business as
HIGHMARK BLUE CROSS BLUE SHIELD, doing business as HIGHMARK
BLUE SHIELD; KEYSTONE HEALTH PLAN WEST, INC., a Pennsylvania
corporation doing business as KEYSTONE BLUE, doing business as
KEYSTONE HEALTH PLAN; CAPITAL BLUE CROSS, a Pennsylvania non-
profit corporation; KEYSTONE HEALTH PLAN CENTRAL, INC., a
Pennsylvania corporation; INDEPENDENCE BLUE CROSS, a Pennsylvania non-
profit corporation; HOSPITAL SERVICE ASSOCIATION OF

NORTHEASTERN PENNSYLVANIA, a Pennsylvania non-profit corporation doing business as BLUE CROSS OF NORTHEASTERN PENNSYLVANIA; FIRST PRIORITY LIFE INSURANCE COMPANY, INC., a Pennsylvania non-profit corporation doing business as FIRST PRIORITY LIFE

_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. No. 2-10-cv-00202)
District Judge:  Hon. David Stewart Cercone

Submitted under Third Circuit LAR 34.1(a)
January 23, 2012

Before:  FISHER, GREENAWAY, JR. and ALDISERT, Circuit Judges.

(Filed: January 25, 2012)
_____

OPINION OF THE COURT
_____

ALDISERT, Circuit Judge.

Appellants, represented by the Ambulance Association of Pennsylvania ("the Association"), appeal from an order of the United States District Court for the Western District of Pennsylvania dismissing their complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim. For the reasons that follow, we will affirm.

To manage the "the financing and delivery of health care services," Pennsylvania's Quality Health Care Accountability Act, 40 PA. CONS. STAT. §§ 991.2101-991.2194, known as Act 68, regulates the financial exchanges between managed care plans ("Plans") and healthcare providers. Two types of providers are relevant here: (1) "participating" providers, who hold payment-governing contracts with

2

the Plans; and (2) "non-participating" providers, who do not. The Association represents a class of non-participating ambulance service corporations. Highmark, like other Appellees, operates a managed care plan that contracts with ambulance service providers.

Reduced to its essence, the proceedings before us are governed by the law of contracts. If a provider contracts with Highmark, the provider may—and often does—bargain for a payment scheme that entitles the provider to collect payments directly from Highmark. If, like Appellants, a provider does not contract with Highmark, it is not entitled to the contractual privileges enjoyed by participating providers.

The non-participating providers here seem to recognize this, but contend that the interposition of Act 68 confers upon them the privilege of direct payment without having signed a managed care agreement. Based on its construction of Act 68, the Association seeks (1) a declaration under 28 U.S.C. § 2201 that Plans must pay the non-participating providers directly; and, if successful, (2) treble damages under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962(c) and (d), because, the Association contends, Highmark's payment method to enrollees for non-participating providers exerts impermissible economic pressure on non-contracting providers in violation of the Hobbs Act, 18 U.S.C. § 1951.

The District Court rejected these contentions. And so do we. We conclude that (1) Act 68 does not require direct payment, and as a result, (2) the Association cannot state a claim under RICO for Hobbs Act violations. We will, therefore, affirm the District Court's order dismissing the complaint.[1]

I.

---

[1] Appellants raise state-law claims for conversion and unjust enrichment. Our resolution of Appellants' other claims, however, obviates our ability to address the state-law issues. See 28 U.S.C. § 1367(a)(3) (permitting a court to refuse to exercise supplemental jurisdiction after all claims over which the court had original jurisdiction are dismissed).

Because we write primarily for the parties, who are familiar with the facts and the proceedings in the District Court, we will revisit them only briefly. Pennsylvania requires ambulance companies to respond to all emergency calls and provide emergency transportation, regardless of whether or how the injured may be insured. See 28 PA. CODE § 1005.10(e)(4). After completing this mandatory service for one of Highmark's enrollees, the Association submits bills to Highmark for the costs it incurred. Rather than paying the Association directly for this service, however, Highmark responds to these invoices by reimbursing its *enrollees*, who then in turn remit payment to the Association.

In February 2010 the Association filed a complaint in the District Court for the Western District of Pennsylvania seeking a declaration that Act 68 requires direct payment to non-participating providers. Highmark moved to dismiss for failure to state a claim. The Court assigned the matter to Magistrate Judge Lisa Pupo Lenihan, who, based on her conclusion that Act 68 does not require direct payment to non-participating providers, recommended that the case be dismissed with prejudice. In a Memorandum Order issued on June 7, 2011, the District Court adopted and modified Magistrate Judge Lenihan's reasoning and granted Highmark's motion. The Association timely appealed.

II.

The District Court had federal question jurisdiction pursuant to 28 U.S.C. § 1331, and supplemental jurisdiction over state-law claims pursuant to 28 U.S.C. § 1367. We have appellate jurisdiction pursuant to 28 U.S.C. § 1291.[2]

_____

[2] "We review *de novo* [the] [D]istrict [C]ourt's decision to dismiss the complaint for failure to state a claim upon which relief may be granted," Eurofins Pharma US Holdings v. BioAlliance Pharma SA, 623 F.3d 147, 158 (3d Cir. 2010), which means that we may affirm the District Court's judgment on any grounds supported by the record, see Elsmere Park Club, L.P. v. Town of Elsmere, 542 F.3d 412, 416 (3d Cir. 2008). We review the District Court's decision not to exercise supplemental jurisdiction for abuse of discretion. See Kach v. Hose, 589 F.3d 626, 634 (3d Cir. 2009). "In considering a Motion to Dismiss

III.

The parties place a single, dispositive issue before us: whether Act 68 requires direct payment to non-participating providers. The Association brings to bear several canons of statutory construction to support its view that Act 68 does, in fact, mandate direct payment.[3] Confronted with the Association's paeans to the precepts of statutory construction, however, we are reminded that even "[t]he devil can cite scripture for his purpose." WILLIAM SHAKESPEARE, THE MERCHANT OF VENICE, act 1, sc. 3. After sifting through its many arguments, we find that the Association cannot justify why we should ignore the plain language of a statute—which does not mention direct payment—in favor of a reading that eviscerates the legislature's intent to encourage contracts. For the four reasons that follow, we hold that Act 68 does not require direct payment and, as a result, no violation of the Hobbs Act occurred. Accordingly, we will affirm the District Court's dismissal of the Association's suit for failure to state a claim.

---

. . . [we] accept[] as true all allegations . . . after construing them in the light most favorable to the non-movant." Bright v. Westmoreland Cnty., 380 F.3d 729, 735 (3d Cir. 2004) (citation omitted). "Dismissal is not proper unless it clearly appears that no relief can be granted under any set of facts that could be proved consistently with the plaintiffs' allegations." Id. (internal quotation marks and citation omitted).

[3] Appellants' main textual support comes from two sections of the Act. First, the Act mandates that a Plan "shall pay a clean claim submitted by a health care provider within forty-five (45) days of receipt of the clean claim." 40 PA. CONS. STAT. § 991.2166(a). A "clean claim" is a "claim for payment for a health care service which has no defect or impropriety." Id. § 991.2102. A "health care service" is "[a]ny covered treatment . . . or other service . . . provided by a health care provider to an enrollee under a managed care plan contract." Id. The Association is a "health care provider," and Highmark is a Plan. Id. Second, the Act requires Plans to cover "all reasonably necessary costs associated with the emergency services provided during the period of the emergency." Id. § 991.2116. The Act elaborates that, in so doing, Plans may "provide reasonable payment or reimbursement for emergency services," Id. § 991.2111(4).

## A.

First, notwithstanding the Association's heavy reliance on the canons of statutory construction, it cannot evade Act 68's absolute silence about direct payment. The Association asks us to piece together a flimsy web of statutory language to conjure a direct-payment mandate out of silence. To that end, the Association clouds the otherwise clear language of the prompt-payment provision in an effort to insert the notion that payments must be not only prompt, but also direct. Yet "it is not for the courts to add, by interpretation, to a statute, a requirement which the legislature did not see fit to include." Commonwealth v. Rieck Inv. Corp., 213 A.2d 277, 282 (Pa. 1965); accord Spectrum Arena Ltd. P'ship v. Commonwealth, 983 A.2d 641, 651-652 (Pa. 2009). The legislature could have written Act 68 to require Plans to "pay *to the provider* all reasonable costs of emergency services." But it did not. Instead, the legislature included a separate, comprehensive section specifically dealing with payments for emergency services—a section that is, again, silent about direct versus indirect payments. 40 PA. CONS. STAT. § 991.2111(4); see infra Part III.B. Indeed, language mandating or even intimating direct payment does not appear in § 2166 nor anywhere else in Act 68. In the face of these legislative omissions, the Association's arguments for adding words ring hollow. Rather than add into the Act a direct-payment mandate, we interpret the absence of such a clause as proof of the legislature's disinclination to regulate payment recipients.

## B.

Second, the Act's emergency-services provision explicitly endorses Highmark's payment scheme. The Association's arguments aimed at obscuring this truth, moreover, lack merit. The Association contends that the conjunction "*or*" in the clause stating that Plans must "provide reasonable payment *or* reimbursement for emergency services," 40

PA. CONS. STAT. § 991.2111(4) (emphasis added), is meant to "indicate . . . [a] synonymous or equivalent expression," AMERICAN HERITAGE DICTIONARY 585 (3d ed. 1994). In essence, then, to sidestep this conjunction's only proper implication—that Plans may choose whether to pay providers *or* reimburse enrollees—the Association contends that *payment* and *reimbursement* mean the same thing. But such a reading runs headlong into a core precept of statutory construction that we must avoid surplusage. If "payment" meant the same thing as "reimbursement," one of the two would be redundant, rendered "'mere surplusage'" by the inclusion of both. Prestol Espinal v. Att'y Gen. of U.S., 653 F.3d 213, 224 (3d Cir. 2011) (quoting William v. Gonzales, 499 F.3d 329, 333 (4th Cir. 2007)). "And it 'is a cardinal principle of statutory construction that a statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant.'" Id. (quoting TRW Inc. v. Andrews, 534 U.S. 19, 31 (2001)). *Payment* and *reimbursement*, therefore, must have different meanings. The inclusion of both, moreover, demonstrates that one word alone, in language as well as in the factual scenario presented here, would not convey the clause's full meaning. Indeed, the language here is not in the nude, clothed as it is in the logical and grammatical difference between *paying* a provider pursuant to a contract, and *reimbursing* its enrollees for services obtained from non-contracting providers. We thus easily conclude that the legislature intended to give Plans the option of whether to pay providers directly or reimburse them indirectly.

## C.

Third, the Association's ado about the absurd results that will result from upholding Highmark's payment system is exaggerated. We hasten to note that there is no allegation that non-participating providers are unpaid or under paid in the current

7

arrangement.[4] Leaving the Act's interpretation as is—and as it long has been—would do nothing more than preserve the status quo. Moreover, when viewed in light of the Act's stated purpose to reduce health care costs, see 40 PA. CONS. STAT. § 3809(a)(3), it is Appellants' proposed interpretation that begins to border on the absurd. Appellants' suggested reading would permit non-participating providers to charge Plans what they wished (up to a "reasonable" limit) while avoiding any contractual obligations—figuratively letting them have their cake and eat it, too. Such a result would undermine the cost-cutting, contract-incentivizing purpose of the Act. Invoking the specter of results that are devoid of logic, therefore, hurts rather than helps the Association's case.

D.

As stated heretofore, the law of contracts further cuts against the Association's position. The Act clearly anticipates a system of contracts between Plans, providers, and enrollees. Section 2102, for example defines a "managed care plan" as an entity that "integrates the financing and delivery of health care services to enrollees by *arrangements with health care providers selected to participate* on the basis of specific standards." Id. § 991.2102 (emphasis added). "Health care services," moreover, are "provided . . . to an enrollee under a managed care plan *contract*." Id. (emphasis added). These contracts, under which Plans and providers may negotiate for such things as, inter alia, direct payment, have become commonplace. Non-participating providers, however, have obviously chosen *not* to enter this system of contracts.

Hence, the argument that a provider who purposefully turned down the burdens *and* benefits of a contract may demand direct payment from a Plan simply because it

---

[4] Obviously, this suit is not strictly about the money. The characterization of how Plans pay non-participating providers has implications for the Association's RICO and Hobbs Act claims.

administered aid to a patient with a Plan contract is a theory devoid of deductive or inductive reasoning. Rather, it smacks of the logical fallacy of *non sequitur*. The contract is between Plan and enrollee; that the Plan would reimburse the enrollee—and no one else, absent a prior assignment—comports with core principles of contract law. Appellants' proposal, on the other hand, would effectively transform a provider into a party to the Plan-enrollee contract, effectively subrogating the enrollee's position and assigning to itself a one-time right to payment. After the transaction, the provider could then extricate itself from obligations while awaiting its next, profitable encounter with an enrollee. This parasitic free-riding flies in the face of settled precepts that a contract must bear the mutual assent of the parties, see RESTATEMENT (SECOND) OF CONTRACTS § 3, and any subsequent assignment must follow the intent of the assignor, see id. § 317.

The precepts of contract law do not permit non-participating providers to temporarily insert themselves into other parties' contracts, take what benefits they can, and then leave the contract. See, e.g., United States v. Bernard, 373 F.3d 339, 345 (3d Cir. 2004) (holding that one party may not "get the benefits of [its] . . . bargain, while evading the costs. . . . [because] contract law would not support such a result"). Bargains, by nature, carry benefits and burdens. The Act already guarantees the benefit of "reasonable" remuneration. If the Association seeks the extra benefit of direct payment, it must bargain for a contract with a Plan. Until then, indirect payment is a legislatively sanctioned price of the Association's freedom.

After scrutinizing the Act's language and the parties' contentions, we cannot fathom that a legislature, concerned about cutting costs and incentivizing contracts, sought to benefit non-contracting providers at the expense of participating providers. Nor can we reconcile the Association's desired outcome with elementary principles of

9

contract law. We thus agree with the District Court and the Magistrate Judge that Act 68 does not require the direct payment of non-participating providers, and that the Association therefore cannot state a claim for relief. Dismissal was and is proper.

IV.

In its Amended Complaint, the Association further alleges that Highmark and other Plans have "engaged in a pattern of attempted and actual extortion, by purposefully ignoring and/or misconstruing" Act 68, and by using the "threat of sending the providers' money to enrollees as a means to exert economic pressure and coerce" non-participating providers to enter into contracts with Plans at unfair rates. App. 00013. This activity, the Association contends, violates the Hobbs Act, 18 U.S.C. § 1962(c) and (d), which makes it "unlawful . . . to conduct [business] affairs through a pattern of racketeering activity." Accordingly, the Association brought suit under the federal civil RICO statute, 18 U.S.C. § 1964(c), for damages sustained due to the alleged Hobbs Act violations.

The Hobbs Act is violated, however, only if Highmark has coerced providers to forfeit a statutory *right* to direct payment. Without such a right, there is no violation of Act 68, and thus, no violations of the Hobbs Act that might support a viable RICO claim. Indeed, Appellants conceded that our conclusion that Highmark's payment scheme violates Act 68 "is a necessary element of the RICO claims . . . [which] rest on violations of the Hobbs Act as the necessary predicate acts." App. 00025. In light of this concession, our unqualified rejection of the Association's Act 68 contentions necessarily means that no violation of those federal statutes took place here.[5]

---

[5] Because of the Association's inability to satisfy the prerequisites for a claim under the Hobbs Act and RICO, we do not reach Highmark's contentions regarding the McCarran Ferguson Act, under which state laws regulating insurance preempt some federal statutes. 15 U.S.C. § 1012(b); cf. Nelson v. Cnty. of Allegheny, 60 F.3d 1010, 1013 n.3 (3d Cir. 1995) (noting that we generally do not address issues not passed on or discussed below).

10

* * * * *

We conclude that Act 68 does not require Plans to make direct payments to non-participating providers. Because our holding means that Highmark's payment scheme does not violate Act 68, the Association's federal RICO and Hobbs Act claims fail. Without any claims remaining, save a few state-law contentions, we furthermore hold that the District Court's decision not to exercise supplemental jurisdiction did not constitute an abuse of discretion. See Kach, 589 F.3d at 634. We will therefore AFFIRM the District Court's dismissal of the Association's claims.