DeMOSS, Circuit Judge,
dissenting:
The majority holds that the “departure bar,” a decades-old regulation currently codified at 8 C.F.R. §§ 1003.23(b)(1) and 1003.2(d), is invalid under step one of the Chevron analysis. For the reasons set forth by former Chief Judge Williams of the Fourth Circuit in her thorough and well-stated dissenting opinion in William v. Gonzales, 499 F.3d 329, 334-45 (4th Cir.2007),[1] I respectfully dissent from my distinguished colleagues’ “judicial repeal” of this long-standing rule. Cf. Concorde Career Colls., Inc. v. Riley, No. 92-1064-CV-W-6, 1994 WL 463951, at *3 (W.D.Mo. Aug. 24, 1994) (“Judicial repeal of a regulation is a decidedly risky business under Chevron .... ”).
The Attorney General’s departure bar regulation has been part of our immigration law for more than fifty years and says in essence that once an alien has been deported to his home country or has otherwise departed the United States, he is no longer eligible to file a motion to reopen or reconsider his immigration proceeding. I recognize, of course, that Congress has the power to repeal any rule adopted by any administrative agency to which the rule-making power has been delegated. It is far from clear, however, that Congress has exercised that power with respect to the departure bar in this case.
I.
The majority identifies three grounds for its holding that Congress repealed the departure bar when it passed the Illegal Immigration Reform and Immigration Responsibility Act (“IIRIRA”) in 1996. I address each of the majority’s arguments in turn.
A.
The majority first argues that the IIRIRA conflicts with the departure bar because it provides that “[a]n alien may file one motion to reopen proceedings under this section.” 8 U.S.C. § 1229a(c)(7)(A). According to the majority, this language makes clear that “an alien’s ability to exercise his statutory right to file a motion to reopen is not contingent upon his presence in the United States.” There is no question, however, that “§ 1229a(c)(7)(A) does not explicitly prohibit or permit motions to reopen made after departure.” William, 499 F.3d at 336 (Williams, C.J., dissenting). “The provision simply does not speak to that question.” Id. In other words, the statute is silent as to whether an alien may file a motion to reopen after departing the United States. If a statute is silent “with respect to the precise question at issue, we proceed to the second step of Chevron analysis.” U.S. Telecom Ass’n v. FCC, 227 F.3d 450, 457 (D.C.Cir. 2000); see also City of Arlington v. FCC, 668 F.3d 229, 255 n. 127 (5th Cir.2012) (quoting U.S. Telecom, 227 F.3d at 457- *267 58); Enron Oil and Gas Co. v. Lujan, 978 F.2d 212, 215 (5th Cir.1992) (“Because the MLA and NGPA are silent on whether the DOI may properly consider state tax reimbursements in calculating ‘gross proceeds’ for purposes of assessing royalties on Enron, this court must inquire only as to whether the agency’s determination is a permissible interpretation” (citing Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc., 467 U.S. 837, 843-44, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984))). The majority improperly inverts this rule. Rather than holding, as I would, that the statute’s silence on the critical issue in this case requires proceeding to Chevron step two, the majority takes the statutory silence as license to stop at Chevron step one.
The reason given by the majority for taking Congress’s failure to speak one way or the other on the departure bar in the IIRIRA as an unambiguous sub silentio repeal of the regulation is that 8 U.S.C. § 1229a(c)(7)(A) refers to “an alien” rather than something like “an alien physically present in the United States.” “By its clear terms,” the majority instructs us, “the statute does not distinguish between those aliens who are abroad and those who remain in the United States — the unmodified ‘alien’ captures both.” The majority’s reasoning misses the fact that § 1229a(c)(7)(A) speaks to a numerical limitation on the number of motions to reopen an alien may file, not to whether the alien may file a motion to reopen post-departure. See William, 499 F.3d at 336, 339 (Williams, C.J., dissenting). “[T]he proper point of emphasis in the statute is on the number ‘one,’ ” not on the words “an alien.” Id. at 336. The majority’s improper reading of § 1229a(c)(7)(A) leads it to construe “an alien” as “any alien,” yielding an unduly expansive interpretation of the statute. See William, 499 F.3d at 336 (Williams, C.J., dissenting) (“The majority’s conclusion that Congress’s intent to repeal 8 C.F.R § 1003.2(d) is clearly evidenced by Congress’s enactment of § 1229a(c)(7)(A) alone does not sufficiently account for the realities of the pre-IIRIRA regulatory framework and imputes more meaning to the codified numerical limitation than the words of the statute can bear.”).
For example, nothing in the statute specifies that the alien filing the motion to reopen must have been the subject of the proceeding in which the motion is filed. Section 5.1(c) of the Board’s Practice Manual states “Only a party to a proceeding, or a party’s representative, may file a motion pertaining to that proceeding. Family members, employers, and other third parties may not file a motion.” BIA Practice Manual § 5.1(c) (2004). Following the majority’s logic, § 5.1(c) may be invalid. To borrow the majority’s phraseology, “the unmodified alien” of § 1229a(c)(7)(A) does not distinguish between the alien who is a party to the underlying proceeding and any family members, employers, or other third parties who are themselves aliens. Thus, under the majority’s view, it is at least arguable that the Immigration Judge must allow an alien’s foreign employer to file a motion to reopen his employee’s immigration proceeding. I find it inconceivable that Congress intended to allow, much less require, this type of third-party practice. But if we are to read “an alien” as “any alien,” it seems a reasonable conclusion, which suggests the majority’s reading is flawed. See Entergy Corp. v. Riverkeeper, Inc., 556 U.S. 208, 222, 129 S.Ct. 1498, 173 L.Ed.2d 369 (2009) (“The inference that respondents and the dissent would draw from the silence is, in any event, implausible, as § 1326(b) is silent not only with respect to cost-benefit analysis but with respect to all potentially relevant factors. If silence here implies prohibition, then the EPA could not consider *268 any factors in implementing § 1326(b) — an obvious logical impossibility.”).
The majority’s expansive reading of § 1229a(c)(7)(A) also ignores the statute’s pre-IIRIRA origins. As both the majority and Judge Williams note, the IIRIRA codified pre-existing regulatory language that was substantially identical to § 1229a(c)(7)(A). William, 499 F.3d at 336 (Williams, C.J., dissenting). There is no dispute that the language of § 1229a(c)(7)(A), when it was in regulatory form, was consistent with the departure bar. According to the majority, however, the same words that were consistent with the departure bar when they were contained in a regulation became inconsistent with the departure bar when Congress used them in a statute. How the transition from regulatory to statutory status transformed the meaning of the language of § 1229a(c)(7)(A) is a mystery the majority leaves unsolved. See William, 499 F.3d at 334-35 (Williams, C.J., dissenting) (“Given that a nearly identical provision limiting aliens to one motion to reopen existed before enactment of the IIRIRA, and in the same regulation containing the departure bar now located in § 1003.2(d), I cannot join the majority’s conclusion that § 1229a(c)(7)(A) by itself repeals the departure bar in 8 C.F.R. § 1003.2(d).” (citation omitted)).
The majority opinion provides the hint, however, that it finds “notabl[ej” that “Congress did not codify the departure regulation.” It appears the majority takes Congress’s decision to codify the motion to reopen but not the departure bar as evidencing an intent to prohibit the Attorney General from continuing to enforce the departure bar. In doing so, the majority proceeds from a false premise: that in enacting the IIRIRA and codifying the motion to reopen, Congress intended to eliminate the Attorney General’s discretion as to whether to retain the departure bar. Put another way, the majority wrongly assumes that in passing the IIRIRA, Congress had only two choices: to make the departure bar mandatory or to make it impermissible. There is no reason to assume, however, that Congress had to either codify the departure bar (thereby eliminating the Attorney General’s discretion to abandon it) or to repeal the departure bar (thereby eliminating the Attorney General’s discretion to maintain it). The most reasonable interpretation of Congress’s actions is a third possibility the majority appears to dismiss out of hand: that Congress intended to leave the question of whether to retain the departure bar to the discretion of the Attorney General and did so by declining to codify the departure bar and remaining silent as to its continued application. Indeed, this type of statutory silence is exactly how one would expect Congress to vest discretion in the Attorney General. See, e.g., United States v. Home Concrete and Supply, LLC, — U.S. -, 132 S.Ct. 1836, 1843, 182 L.Ed.2d 746 (2012) (plurality opinion) (describing Chevron as stating that a “statute’s silence ... as to a particular issue means that Congress has not directly addressed the precise question at issue (thus likely delegating gap-filling power to the agency)” (internal quotations omitted)); Entergy Corp., 556 U.S. at 222, 129 S.Ct. 1498 (holding that “[i]t is eminently reasonable” to conclude that statute’s silence “is meant to convey nothing more than a refusal to tie the agency’s hands”); Irvine Med. Ctr. v. Thompson, 275 F.3d 823, 828 (9th Cir.2002) (holding that agency had discretion to both adopt and later eliminate a carry-forward provision under a statute silent as to carry-forward provision, noting “While it is clear that Congress permitted the Secretary to implement a carry-forward provision, it is far from clear that Congress required such a *269 provision”). Accordingly, the majority errs in holding that the plain meaning of § 1229a(c)(7)(A) eliminates the Attorney General’s discretion to retain the departure bar.
B.
The second reason given by the majority for finding that § 1229a(c)(7)(A) conflicts with the departure bar is that §§ 1229a(c)(7)(B)-(C) impose evidentiary requirements and time limitations on motions to reopen. The majority reasons that “[t]he fact that Congress created limitations on the exercise of the motion to reopen, yet did not place a geographic restriction, supports a reading of § 1229a(c)(7)(A) that does not deny departed aliens their right to file a motion to reopen.” This argument collapses under its own weight. Under the majority’s reasoning, but for § 1229a(c)(7)(C), which provides for a general 90-day deadline for motions to reopen, the Attorney General would be prohibited from imposing any time limitation at all. Nor can the Attorney General, under the majority’s holding, continue to enforce 8 C.F.R. § 1003.2(g)(1), which provides that “[a] motion and any submission made in conjunction with a motion must be in English or accompanied by a certified English translation.” The statute does not impose a language requirement on motions to reopen or the affidavits and other evidentiary materials required to be filed with the motion. Under the majority’s reasoning, the fact that Congress did not impose a language requirement but did impose evidentiary and timing requirements on motions to reopen “supports a reading” of §§ 1229a(e)(7)(A)-(B) that “does not deny aliens their right to file a motion to reopen” in whatever language they choose. Indeed, under the majority’s view, the fact that Congress did not elevate this regulation to statutory status, while codifying other restrictions on motions to reopen, shows that Congress intended to repeal the regulation.
Again, the fallacy in the majority’s argument is that it proceeds from a false premise: that because Congress filled some gaps as to the requirements for a motion to reopen, Congress necessarily left no other gaps for the Attorney General to fill. But this has never been the rule under Chevron. See Entergy Corp., 556 U.S. at 223, 129 S.Ct. 1498 (“[Ujnder Chevron, that an agency is not required to do so does not mean that an agency is not permitted to do so.”); see also Home Concrete and Supply, 132 S.Ct. at 1843 (statutory silence indicates Congress “likely delegated] gap-filling power to the agency”); Nat. Cable and Telecomms. Ass’n v. Brand X Internet Servs., 545 U.S. 967, 997, 125 S.Ct. 2688, 162 L.Ed.2d 820 (2005) (statutory silence suggests “that the Commission has the discretion to fill the consequent statutory gap”). The case cited by the majority for its proposition, United States v. Johnson, 529 U.S. 53, 58, 120 S.Ct. 1114, 146 L.Ed.2d 39 (2000), has nothing to do with Chevron deference. Rather, it stands for the rule that courts may not create exceptions to statutes simply to accommodate equitable considerations. But, the fact that courts should not engage in statutory gap-filling certainly does not prohibit agencies from doing so under Chevron. See Brand X, 545 U.S. at 982, 125 S.Ct. 2688 (“Chevron’s premise is that it is for agencies, not courts, to fill statutory gaps.”). Far from showing that Congress meant to drastically limit the Attorney General’s discretion as to what is required of a motion to reopen, §§ 1229a(c)(7)(B)-(C) actually support the view that the proper focus of § 1229a(c)(7)(A) is not its purportedly unbounded geographic scope, but its limitation on the number of motions to reopen *270 an alien may file. See William, 499 F.3d at 336 (Williams, C.J., dissenting) (finding that, in light of the 90-day deadline codified at § 1229a(c)(7)(C), “[t]he statutory context of § 1229a(c)(7) makes clear that it is just a numerical limitation — nothing more, nothing less”).
C.
The majority’s third and final argument relies on a 2005 amendment to § 1229a(e)(7) that permits domestic abuse victims to file motions to reopen after the 90-day deadline, provided that they are physically within the United States when the motion is filed. According to the majority, “The physical presence requirement in close proximity to the textual language at issue supports the conclusion that Congress did not condition the right to file a motion to reopen on the alien’s presence in the United States.” The majority further asserts that “an interpretation of the statute that would impose a general physical presence requirement would effectively read the [2005 amendment] out of the statute.”
As an initial matter, the majority again misses the relevant inquiry. The issue in this case is not whether Congress has “condition[ed] the right to file a motion on the alien’s presence in the United States” or “imposed a general physical presence requirement,” but whether the Attorney General has discretion to do so under the statute. Accordingly, the question is not whether the 2005 amendment is inconsistent with a statutory provision requiring the departure bar, but whether it is inconsistent with the Attorney General having discretion to either retain or abandon the departure bar. If it is Congress’s intention to be agnostic as to the departure bar, then the physical presence requirement does not become mere surplusage. Rather, Congress has provided for the eventuality that the Attorney General decides to abandon the departure bar, in which case the 2005 amendment will come into play. At most, the 2005 amendment shows that Congress anticipates the departure bar may cease to exist, not that Congress mandates its extinction.
Moreover, as Judge Williams notes, it is not clear that the 2005 amendment provides any insight into what Congress intended by codifying the motion to reopen. See William, 499 F.3d at 337 (Williams, C.J., dissenting). Section 1229a(c)(7)(A) was passed as part of the IIRIRA in 1996, the 2005 amendment was passed as part of the Violence Against Women and Department of Justice Reauthorization Act of 2005. Thus, although §§ 1229a(c)(7)(A) and 1229a(c)(7)(C)(iv)(IV) are in “close proximity” in terms of codification, they are “connected neither in time nor purpose.” William, 499 F.3d at 337 (Williams, C.J., dissenting). For that reason, the physical presence requirement of the 2005 amendment provides, at best, little insight into whether Congress intended to repeal the departure bar via § 1229a(c)(7)(A) nine years earlier.
Indeed, the majority’s reading of the congressional intent behind the 2005 amendments tells an implausible story. According to the majority, although Congress in 2005 was clearly of the view that the departure bar was inconsistent with § 1229a(c)(7)(A), it did not amend § 1229a(c)(7)(A) to make clear that there could be no general physical presence requirement on motions to reopen, but added § 1229a(c)(7)(C)(iv)(IV) on the assumption that the Attorney General would sua sponte reverse his consistent, decade-long interpretation of § 1229a(e)(7)(A) and find he was without discretion to impose a physical presence requirement. Once again, the majority has it backwards. The fact that Congress considered the issue of *271 the alien’s geographic location in 2005 and took no action to address the Attorney General’s interpretation of § 1229a(c)(7)(A) shows congressional acquiescence to the departure bar, not an intent to repeal it. See Irvine Med. Ctr., 275 F.3d at 830 n. 4 (“Moreover, the legislative acquiescence in the carry-over regulation is consistent with the view that Congress left the decision to the Secretary. Since the repeal in 1988, Congress has taken no action to require a carry-forward provision, which weakens further the plaintiffs’ contention that Congress sought to mandate a carry-forward.”).
II.
Having concluded that the statute is silent “with respect to the precise question at issue, we proceed to the second step of Chevron analysis.” U.S. Telecom Ass’n, 227 F.3d at 457. The highly deferential standard of Chevron step two requires that we give controlling weight to the agency’s interpretation of the statute unless it is “arbitrary, capricious, or manifestly contrary to the statute.” Chevron, 467 U.S. at 844, 104 S.Ct. 2778. “Once we determine that a statute is silent ... with respect to a question at issue, we must defer to the agency’s resolution of the question if the agency’s interpretation is based on a permissible construction of the statute.” City of Arlington, 668 F.3d at 252; see also Orellana-Monson v. Holder, 685 F.3d 511, 520-21 (5th Cir.2012) (noting that under Chevron step two, an agency interpretation “is binding as long as it is a permissible construction of the statute.” (internal quotations omitted)). An agency interpretation fails Chevron step two only if “it is contrary to clear congressional intent or frustrates the policy Congress sought to implement.” Providence Yakima Med. Ctr. v. Sebelius, 611 F.3d 1181, 1190 (9th Cir.2010) (internal quotations omitted). “[J]udicial deference to the Executive Branch is especially appropriate in the immigration context .... ” INS v. Aguirre-Aguirre, 526 U.S. 415, 425, 119 S.Ct. 1439, 143 L.Ed.2d 590 (1999). Again following Judge Williams, I find that the departure bar clears Chevron step two. William, 499 F.3d at 342-44 (Williams, C.J., dissenting).
A.
Appellant advances two arguments for why the “departure bar is in clear tension with the intent of the IIRIRA and the larger immigration scheme.” First, Appellant argues that the departure bar renders the statutory requirement that an alien be removed within ninety days of the final order of removal, see 8 U.S.C. § 1231(a)(1)(A), in tension with the ninety-day deadline to file a motion to reopen. This supposed tension, however, was resolved by the Supreme Court in Dada v. Mukasey, 554 U.S. 1, 21, 128 S.Ct. 2307, 171 L.Ed.2d 178 (2008). There, the Court noted that an “alien may be removed by the DHS within 90 days [of a final order of removal], even if the motion to reopen has yet to be adjudicated.” Id. “But,” the Court observed, “the alien may request a stay of the order of removal and, though the BIA has discretion to deny the motion for a stay, it may constitute an abuse of discretion for the BIA to do so where the motion states nonfrivolous grounds for reopening.” Id. (internal citation omitted). Accordingly, the departure bar may be read in harmony with the 90-day deadline for motions to reopen and the 90-day deadline for mandatory removal.[2]
*272 B.
Appellant also argues that the IIRIRA’s elimination of the post-departure bar to judicial review shows a Congressional intent “to allow post-departure adjudications while furthering its interests in increased accuracy and a streamlined deportation process.” For the same reasons as Judge Williams, I do not take the repeal of the judicial departure bar as evidencing a congressional intent to eliminate the Attorney General’s discretion to maintain the administrative departure bar to motions to reopen. In short, petitions for judicial review and motions to reopen are very different creatures that serve distinct purposes. See William, 499 F.3d at 343 (Williams, C.J., dissenting) (“A petition for review of a final order of removal represents an alien’s first and only opportunity for judicial review of the merits of the order, whereas a motion to reopen seeks a subsequent opportunity for administrative review.”); see also id. (noting that motions to reopen “ ‘are disfavored for the same reasons as are petitions for rehearing and motions for a new trial on the basis of newly discovered evidence’ ” and that accordingly one cannot “impute to Congress a similar intention to free the motion to reopen from the workings of the departure bar, given the motion’s disfavored status.” (quoting INS v. Doherty, 502 U.S. 314, 323, 112 S.Ct. 719, 116 L.Ed.2d 823 (1992))). As articulated by the First Circuit, the repeal of the judicial departure bar “does not remotely support an argument that Congress also intended, implicitly, to allow post-departure petitions to reopen a closed administrative proceeding.” Pena-Muriel v. Gonzales, 489 F.3d 438, 442 (1st Cir.2007).
Finally, I note that had it been the intent of Congress to ensure that all challenges to final deportation orders be permitted post-departure, Congress could have, but did not, codify that requirement. Indeed, the fact that Congress took unmistakably clear action with respect to the judicial departure bar makes its silence with respect to the administrative departure bar all the more deafening. In my view, the repeal of the judicial departure bar, combined with Congress’s failure to speak as to the departure bar at issue here, suggests “acquiescence to its continued functioning,” not an intention to ban it. William, 499 F.3d at 344 (Williams, C.J., dissenting).[3]
*273 Appellant has provided no reason why the departure bar is invalid under Chevron step two. I therefore respectfully dissent from the majority’s decision holding the departure bar ultra vires under Chevron,[4]

. The William case dealt with 8 C.F.R. § 1003.2(d), which applies to motions to reopen before the Board of Immigration Appeals, while the instant case relates to 8 C.F.R. § 1003.23(b)(1), which applies to motions to reopen before an Immigration Judge. That difference, however, has no affect on the foregoing analysis. Indeed, each of the cases cited by the majority as “decisions of our sister circuits that have addressed this specific issue,” relate to 8 C.F.R. § 1003.2(d), not 8 C.F.R. § 1003.23(b)(1).

. Noting that it had not considered the validity of the departure bar because the regulation had not been challenged, the Dada Court nonetheless suggested that ‘‘[a] more expeditious solution to the untenable conflict between the voluntary departure scheme and *272 the motion to reopen might be to permit an alien who has departed the United States to pursue a motion to reopen post departure.” Dada, 554 U.S. at 22, 128 S.Ct. 2307. I take the Court’s suggestion as directed to the Attorney General and Congress rather than to the lower courts. Taken as persuasive dicta on the issue in this case — which is how Appellant would like us to read it — the Court's statement, at best, suggests a result with no clear path to getting there. Mindful that we are bound to obey precedential holdings in favor of dicta suggesting a different result, I stick to the well-worn Chevron path and simply follow where it leads. See United States v. Lipscomb, 299 F.3d 303, 313 (5th Cir.2002) ("Because Salinas and Fischer went no further than to advert in dicta to the mere possibility that the argument now advanced by Lipscomb might someday be favored, we are bound to adhere to Westmoreland’s statutory holding.”).

. I note also that the administrative departure bar was never mentioned in the legislative history of the IIRIRA or in any committee hearings on the law. The lack of any mention of the departure bar in connection with the enactment of the IIRIRA, apart from what it says about Congress’s intent, raises an issue of transparency. Assuming that one of the purposes of the IIRIRA was to repeal a half-century old regulation continually employed by the Attorneys General of eleven successive presidential administrations, should Congress not have made that clear to the public prior to enactment of the IIRIRA, so that anyone supporting the regulation could have advocated for its retention? Surely at least the Attorney General in 1996 was entitled to some oppor *273 tunity to present her views on what effect repeal of the departure bar would have on the functioning of her department.

. As the majority points out, four other Courts of Appeals have reached the same result as the majority and none have reached the opposite result, save a divided panel of the Tenth Circuit which was subsequently reversed en banc. See Contreras-Bocanegra v. Holder, 629 F.3d 1170 (10th Cir.2010), rev’d en banc, 678 F.3d 811 (10th Cir.2012). The uniformity among the circuits masks the difficulty of this issue. See William, 499 F.3d at 335 (Williams, C.J., dissenting) (noting that the case presented “a close question”). The basic issue in dispute here, how congressional silence should be interpreted in the Chevron analysis, is one that courts have struggled with. David M. Hasen, The Ambiguous Basis of Judicial Deference to Administrative Rules, 17 Yale J. on Reg. 327, 337 (2000). For that reason, I hope the Attorney General will not decline to seek review of this' question in the Supreme Court solely due to the absence of a circuit split.