PUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

HAWA MOSERE,

*Petitioner,*

v.

MICHAEL B. MUKASEY,

*Respondent.*

No. 08-1241

On Petition for Review of an
Order of the Board of Immigration Appeals.

Argued: October 29, 2008

Decided: January 12, 2009

Before WILLIAMS, Chief Judge, MICHAEL, Circuit
Judge, and John T. COPENHAVER, JR., United States
District Judge for the Southern District of West Virginia,
sitting by designation.

Petition denied in part and dismissed in part by published
opinion. Chief Judge Williams wrote the opinion, in which
Judge Michael and Judge Copenhaver joined.

## COUNSEL

**ARGUED**: David Christopher Drake, JOHNSON & ASSO-
CIATES, P.C., Arlington, Virginia, for Petitioner. Kevin
James Conway, UNITED STATES DEPARTMENT OF JUS-

TICE, Washington, D.C., for Respondent. **ON BRIEF:** Randall L. Johnson, JOHNSON & ASSOCIATES, P.C., Arlington, Virginia, for Petitioner. Gregory G. Katsas, Acting Assistant Attorney General, Richard M. Evans, Assistant Director, Virginia Lum, Trial Attorney, Office of Immigration Litigation, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent.

**OPINION**

WILLIAMS, Chief Judge:

Hawa Fatmatta Mosere, a native and citizen of Sierra Leone, appeals the decision of the Board of Immigration Appeals ("BIA") denying her motion to reopen as untimely and declining to exercise its power to reopen *sua sponte*. Because Mosere filed her petition more than eleven years after entry of the order granting her voluntary departure, we find that the BIA did not abuse its discretion in rejecting her motion to reopen as untimely under 8 C.F.R. § 1003.2(c)(2) (2008). Further, because there are no meaningful standards by which to evaluate the BIA's decision not to exercise its power to reopen under 8 C.F.R. § 1003.2(a), we find, in concert with every court to have considered this issue, that we lack jurisdiction to review the BIA's refusal to reopen Mosere's case *sua sponte*.

I.

Mosere entered the United States in 1990 on a visitor's visa. She overstayed this visa and was arrested on November 29, 1995 and ordered to show cause as to why she should not be deported. At the time of her arrest, Mosere's husband filed an I-130 Petition for Alien Relative form on her behalf, but admitted during an interview that the marriage was created solely for the purpose of helping Mosere remain in the United

States. Indeed, the husband admitted that he was paid $1,200.00 over five years for the marriage and that he had never lived with Mosere.

On November 3, 1996, an immigration judge ("IJ") found Mosere deportable and granted her application for voluntary departure. The IJ required that Mosere depart before June 13, 1997, and provided that if she did not voluntarily depart, an alternate deportation order would become immediately effective.

Mosere failed to depart, however, and remained in the U.S. where she served as a private caretaker for an elderly woman in the woman's home. On December 3, 2007, more than eleven years after the entry of the order granting her voluntary departure, she filed a motion to reopen her removal order. In her motion, Mosere claimed that she declined to voluntarily depart the United States because of Sierra Leone's civil war[1] and her own medical issues.[2] In support of her motion, Mosere noted that in 2003, her son, Sarh Samuel Filo, became a naturalized United States citizen and that on July 18, 2006, he filed an I-130 petition on Mosere's behalf. That petition for an Adjustment of Status was granted on October 31, 2007.

On December 13, 2007, an IJ denied the motion to reopen as untimely. The IJ stated that Mosere "was granted voluntary departure until June 13, 1997 with an alternate order of removal to Sierra Leone." (J.A. at 73.) This decision "was accepted as final." (J.A. at 73.) The IJ also noted that even considering the civil war in Sierra Leone, Temporary Protec-

---

[1]Sierra Leone was embroiled in a civil war from 1991-2002. By mid-1997, approximately one-third of Sierra Leone's population was displaced within the country.

[2]Mosere claims to suffer from both sickle cell anemia and a heart condition that causes her pain.

tive Status for individuals from Sierra Leone ended on September 3, 2003.[3]

The BIA dismissed Mosere's subsequent appeal, concluding that the motion to reopen was untimely and declining to find the "extraordinary circumstances" claimed by Mosere. As the BIA explained, "[w]e find inadequate evidence that she was unable to depart due to illness and we find no basis for exceptional circumstances due to the war in Sierra Leone." (J.A. at 2.) The BIA also rejected Mosere's claim that she was not barred from filing for relief because sufficient time had passed, *see* 8 U.S.C.A. § 1229c(d) (West 2005 & Supp. 2008) (prohibiting individuals who decline to voluntarily depart from filing for new relief for ten years), and reiterated that Mosere's motion to reopen was untimely and that it would not use its authority to reopen *sua sponte* because "we do not find that she would merit a grant of relief as a matter of discretion." (J.A. at 2.) Supporting this conclusion, the BIA noted that Mosere "fail[ed] to depart voluntarily, choosing to remain here for more than 10 years after being ordered to deport, [and] . . . she previously committed marriage fraud in an attempt to remain here." (J.A. at 2.)

Mosere filed a timely petition for review, and 8 U.S.C.A. § 1252(a)(1) (West 2005) provides our jurisdiction. During the pendency of the petition for review, Mosere filed a motion for stay of deportation in our court, and the Government filed a motion to dismiss Mosere's petition for lack of jurisdiction. On March 27, 2008, a panel of this court denied Mosere's motion for stay and delayed action on the Government's motion to dismiss. On April 29, 2008, Mosere's motion for reconsideration was denied. After hearing oral argument, we

---

[3]Temporary Protected Status is a temporary immigration status granted to citizens of designated countries who are temporarily unable to safely return to their home country because of ongoing armed conflict, an environmental disaster, or other extraordinary and temporary conditions. 8 U.S.C.A. § 1254a (West 2005).

now conclude both that the BIA did not abuse its discretion in determining that Mosere's motion to reopen was untimely and that we lack jurisdiction to review the BIA's refusal to exercise its power to reopen *sua sponte*. We address each issue in turn.

## II.

### A.

Mosere first contends that the BIA erred by concluding that her motion to reopen was untimely.[4] We review the denial of a motion to reopen for an abuse of discretion. *INS v. Doherty*, 502 U.S. 314, 323 (1992); *Stewart v. U.S. INS*, 181 F.3d 587, 595 (4th Cir. 1999). Motions to reopen "are disfavored . . . [because] every delay works to the advantage of the deportable alien who wishes merely to remain in the United States." *Doherty*, 502 U.S. at 323. We thus reverse the BIA's decision only if it is "arbitrary, irrational, or contrary to law." *Sevoian v. Ashcroft*, 290 F.3d 166, 174 (3d Cir. 2002).

By regulation, a motion to reopen "must be filed *no later than 90 days*" after the date on which the administrative decision at issue becomes final. 8 C.F.R. § 1003.2(c)(2) (emphasis added). Given the clear language, it is impossible for us to say that the BIA abused its discretion in finding Mosere's motion, filed *more than eleven years* after the order of voluntary departure, untimely. Finding no abuse of discretion, we affirm the BIA's denial of Mosere's motion to reopen as untimely.

### B.

Mosere next alleges that the BIA erred by declining to

---

[4]Mosere also argues that the BIA erroneously concluded that she was time-barred under 8 U.S.C.A. § 1229c(d) (West 2005 & Supp. 2008). Because we can affirm the BIA's decision based on its alternative holding that Mosere's motion was untimely, we do not address this argument.

exercise its discretionary power to *sua sponte* reopen Mosere's asylum application for extraordinary circumstances. Every circuit that has considered this issue has determined that the BIA's decision whether to exercise its power to reopen *sua sponte* is unreviewable because there are no meaningful standards for courts to apply in review. *Tamenut v. Mukasey*, 521 F.3d 1000, 1004-05 (8th Cir. 2008) (en banc) (per curiam); *Ali v. Gonzales*, 448 F.3d 515, 518 (2d Cir. 2006); *Enriquez-Alvarado v. Ashcroft*, 371 F.3d 246, 249-50 (5th Cir. 2004); *Pilch v. Ashcroft*, 353 F.3d 585, 586 (7th Cir. 2003); *Belay-Gebru v. INS*, 327 F.3d 998, 1000-01 (10th Cir. 2003); *Calle-Vujiles v. Ashcroft*, 320 F.3d 472, 474-75 (3d Cir. 2003); *Ekimian v. INS*, 303 F.3d 1153, 1159 (9th Cir. 2002); *Luis v. INS*, 196 F.3d 36, 40-41 (1st Cir. 1999); *Anin v. Reno*, 188 F.3d 1273, 1279 (11th Cir. 1999). We have reached the same decision in a prior unpublished opinion, *Doh v. Gonzales*, 193 F. App'x 245, 246 (4th Cir. 2006) (per curiam), and we reaffirm that holding today.

Section 1003.2(a) provides that the BIA "may" reopen on its own motion, but it "provides no guidance as to the BIA's appropriate course of action, sets forth no factors . . ., places no constraints on the BIA's discretion, and specifies no standards for a court to use to cabin the BIA's discretion." *Tamenut*, 521 F.3d at 1004. While the BIA has indicated it will exercise its power to reopen *sua sponte* in the presence of exceptional circumstances, "the mere fact that the BIA has acknowledged the existence of its authority to reopen *sua sponte* in what it deems to be 'exceptional situations' is not sufficient to establish a meaningful standard for judging whether the BIA is *required* to reopen proceedings on its own motion." *Tamenut*, 521 F.3d at 1005 (emphasis in original). Because there are no meaningful standards by which to judge the BIA's exercise of its discretion, we find that we lack jurisdiction to review its refusal to *sua sponte* reopen Mosere's case.

## III.

For the foregoing reasons, we deny the petition for review in part and dismiss it in part.

*PETITION DENIED IN PART
AND DISMISSED IN PART*