**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 09-1097**

TUNBOSUN OLAWALE WILLIAM,

                    Petitioner,

          v.

ERIC H. HOLDER, JR., Attorney General,

                    Respondent.

On Petition for Review of an Order of the Board of Immigration Appeals.

Argued:  December 2, 2009          Decided:  December 30, 2009

Before WILKINSON, GREGORY, and DUNCAN, Circuit Judges.

Petition dismissed by unpublished per curiam opinion.

**ARGUED:** Amy Lamoureux Riella, VINSON & ELKINS, Washington, D.C., for Petitioner.  Woei-Tyng Daniel Shieh, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent.  **ON BRIEF:** Craig D. Margolis, Tirzah S. Lollar, VINSON & ELKINS, Washington, D.C., for Petitioner.  Tony West, Assistant Attorney General, Civil Division, Susan K. Houser, Senior Litigation Counsel, Office of Immigration Litigation, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Tunbosun Olawale William ("William") petitions this court for review of an order of the Board of Immigration Appeals (the "BIA") declining to exercise its sua sponte authority to reopen his petition for review of his removal proceedings. Because our precedent in Mosere v. Mukasey, 552 F.3d 397 (4th Cir. 2009), provides that we lack jurisdiction to review the BIA's refusal to reopen deportation proceedings sua sponte, we must dismiss the petition for review.[1]

I.

On November 28, 1997, Immigration and Naturalization Services (the "INS") issued a notice to appear to show cause to William, a native citizen of Nigeria, alleging that he was eligible for removal from the United States as an aggravated felon based on his conviction for receipt of a stolen credit card. On March 9, 1998, INS made a motion to amend the notice to appear, to include an additional charge of removability for having committed a crime involving moral turpitude. On

---

[1] William argues that by consistently allowing reopening where a petitioner has been removed on the basis of a criminal conviction that was later vacated, the BIA has effectively cabined its discretion. Because we find this argument unavailing on these facts, however, we need not resolve that issue here.

September 3, 1998, the immigration judge (the "IJ") conducted the removal proceedings, at which he allowed the amendment and also found William removable for having committed a crime of moral turpitude. On November 30, 2000, William sought a waiver of inadmissibility in order to apply for an adjustment of status based on a petition filed by his wife. On February 19, 2002, the IJ denied the waiver application, finding William did not have the required seven years of continuous lawful residence. On October 15, 2003, the BIA affirmed the IJ's decision.

William filed a motion to reconsider, which the BIA denied on March 29, 2004. William was removed from the country on July 11, 2005. On December 21, 2005, William filed a motion to reopen with the BIA, asserting that the criminal conviction underlying his charge of removability for having committed a crime of moral turpitude had been vacated by the state court that entered it on October 24, 2005. According to William, he had filed a writ of error coram nobis, asserting that he had never been advised of his Fifth Amendment rights against self-incrimination. William alleged that the state court vacated his conviction as a result of that error.

On February 6, 2006, the BIA refused to consider the motion to reopen, noting that William had already been removed from the country and that 8 C.F.R. § 1003.2(d) barred a person from

3

moving to reopen once removal had been finalized.[2] William petitioned this court for review. In William v. Gonzales, 499 F.3d 329 (4th Cir. 2007), we held that in light of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (the "IIRIRA"), Pub. L. No. 104-208, 110 Stat. 3009 (codified in scattered sections of 8 U.S.C.), 8 C.F.R. § 1003.2(d) was no longer valid. We further held that pursuant to 8 U.S.C. § 1229a(c)(7)(A), an alien had the right to file one motion to reopen, regardless of whether he is present in the United States when the motion is filed. William, 499 F.3d at 333. Accordingly, we granted the petition for review, vacated the BIA's order, and remanded for further proceedings consistent with the opinion. Id. at 334.

On remand, the BIA again denied William's motion to reopen. Initially, the BIA noted that after we issued William, it filed a precedent decision reaffirming the conclusion that 8 C.F.R. § 1003.2(d) was a binding regulation that precluded the BIA from considering motions to reopen filed by aliens who have left the country after being ordered removed. The BIA acknowledged, however, that William was binding precedent within the Fourth

---

[2] 8 C.F.R. § 1003.2(d) states, "A motion to reopen or a motion to reconsider shall not be made by or on behalf of a person who is the subject of exclusion, deportation, or removal proceedings subsequent to his or her departure from the United States."

Circuit. Upon consideration of the merits of William's motion, the BIA noted that motions to reopen are disfavored in the interests of finality and the conservation of administrative resources. The BIA further noted that it generally does not consider motions to reopen that are filed after the ninety-day deadline.

The BIA acknowledged its discretionary authority to reopen cases sua sponte, but stated that it reserves reopening in such instances as an "extraordinary remedy reserved for truly exceptional situations." J.A. 774. The BIA noted that every federal court to have considered the question has found that the BIA's decision to exercise its sua sponte authority to reopen is not reviewable.

The BIA then held that vacatur of William's criminal conviction was not an exceptional circumstance warranting reopening. The BIA stated:

> [W]hen a motion to reopen is filed long after the relevant removal order has become final, long after the statutory deadline for seeking reopening has passed and, indeed, long after the movant has in fact been physically removed from the United States (thereby consummating the removal proceedings in every legal sense), we believe the imperative of finality forbids reopening except upon a showing that enforcement of the removal order would constitute a gross miscarriage of justice.

J.A. 775. The BIA stated that a removal order results in a gross miscarriage of justice "only if the order clearly could

5

not have withstood judicial scrutiny under the law in effect at the time of its issuance or execution." Id. The BIA found that at the time William's removal order was entered and William was removed, the criminal conviction was a valid factual predicate for his removal. The BIA further found that William did not seek to vacate his conviction until after he was removed. The BIA thus noted that because William "sle[pt] on his rights" until after his removal, the enforcement of the order of removal was not a miscarriage of justice. J.A. 776 (internal quotations omitted) (alterations in original).

The BIA did state that a vacatur of a criminal conviction can sometimes justify invocation of its sua sponte reopening authority. Specifically, the BIA noted that the result might have been different if William sought vacatur before his removal or if the vacatur was based on new evidence that was not reasonably available until after he was removed. The Board then noted that in this case, even if it had granted the motion to reopen, William would not have been able to regain his lawful permanent resident status. The BIA stated:

> [E]ven were we to grant the respondent's motion he could not return to this country except upon compliance with the [Department of Homeland Security's] documentary and "admission" requirements, matters wholly out of our control, at least in the first instance. As the DHS notes in its brief, however, such admission would not be available to the respondent, absent a waiver, because his 2005 removal

6

precludes him from seeking admission for a period of 10 years.[3]

J.A. 776.

The BIA therefore denied William's motion to reopen and declined to reopen the matter sua sponte. William filed a timely petition for review.

## II.

William argues that the BIA erred in refusing to exercise its discretion to reopen his case sua sponte.[4] 8 C.F.R. § 1003.2(a) states in relevant part, "The [BIA] may at any time reopen or reconsider on its own motion any case in which it has rendered a decision."[5] In Mosere v. Mukasey, 552 F.3d 397 (4th

---

[3] The "requirements" refer to the fact that William, having been outside the United States more than 180 days, would be seeking "admission" and, having been ordered removed, could not receive it for ten years after removal. See 8 U.S.C. § 1182(a)(9)(ii)(I). The "waiver" refers to a discretionary waiver under former § 212 of the Immigration and Naturalization Act (the "INA"), which was repealed by the IIRIRA. Massis v. Mukasey, 549 F.3d 631, 633 n.1 (4th Cir. 2008).

[4] William does not challenge the BIA's denial of his untimely motion to reopen.

[5] The agency regulation 8 C.F.R. § 1003.2(a) is not expressly based on statute. Indeed, "no statutory language authorizes the BIA to reconsider a deportation proceeding sua sponte." Belay-Gebru v. I.N.S., 327 F.3d 998, 1001 (10th Cir. 2003); see also Tamenut, 521 F.3d at 1004. Nevertheless, ten federal courts of appeals, including ours, have held that the decision to reopen is not disallowed but rather a matter of agency discretion.

7

Cir. 2009), we considered this very regulation, and noted that it "provides no guidance as to the BIA's appropriate course of action, sets forth no factors . . . , places no constraints on the BIA's discretion, and specifies no standards for a court to use to cabin the BIA's discretion."  Mosere, 552 F.3d at 401 (quoting Tamenut v. Mukasey, 521 F.3d 1000, 1004-05 (8th Cir. 2008) (en banc) (per curiam)).  We therefore found that section 1003.2(a) lacked any meaningful standards by which to judge the BIA's exercise of its discretion, and so found that we lacked jurisdiction to review the BIA's refusal to reopen the petitioner's case sua sponte.  Mosere, 552 F.3d at 401.

The conclusion we reached in Mosere comported with the collective view of the First, Second, Third, Fifth, Seventh, Eighth, Ninth, Tenth, and Eleventh Circuits.  See id. at 400-01 (collecting cases).  This view reflects the fact that "review is not to be had if the statute is drawn so that a court would have no meaningful standard against which to judge the agency's exercise of discretion."  Heckler v. Chaney, 470 U.S. 821, 830 (1985).  We are therefore compelled to conclude that the BIA's decision in this case is also unreviewable.

III.

For the foregoing reason, we dismiss the petition for review.

<u>PETITION DISMISSED</u>