**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 18-1110**

MING FANG CHEN; ZHAO WU ZENG, a/k/a Zhou Wu Zheng,

    Petitioners – Appellants,

  v.

MATTHEW G. WHITAKER, Acting Attorney General,

    Respondent – Appellee.

On Petition for Review of an Order of the Board of Immigration Appeals.

Submitted:  December 14, 2018     Decided:  December 21, 2018

Before KING, DIAZ, and RICHARDSON, Circuit Judges.

Petition for review denied by unpublished per curiam opinion.

Theodore N. Cox, New York, New York, for Petitioners.  Chad A. Readler, Acting Assistant Attorney General, Shelley R. Goad, Assistant Director, Kristen A. Giuffreda, Trial Attorney, Office of Immigration Litigation, Civil Division, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Petitioners Ming Fang Chen and her husband Zhao Wu Zeng are citizens of the People's Republic of China who have been ordered removed from the United States and seek to reopen their removal proceedings. This petition represents their second effort to have the Board of Immigration Appeals (the "BIA") reopen their removal proceedings. Their underlying claims and their effort to reopen are predicated on their Christian faith and their assertion that conditions for practicing Christians in China have worsened in recent years. As explained below, the petitioners are unable to satisfy the demanding standard for reopening such proceedings, and we deny their petition for review.

I.

A.

The petitioners are natives and citizens of the Fujian province of China who met each other and married in the United States. *See* A.R. 55, 62, 69.[1] They now have two children who are American citizens. In June 2006, while pregnant with her second child, Chen filed an affirmative application for asylum and withholding of removal, alleging that she would be forced to undergo an abortion or be sterilized if she returned to China. *See id.* at 4339-49. Chen listed her husband as a derivative beneficiary.

---

[1] Citations herein to "A.R.__" refer to the contents of the Administrative Record filed in this proceeding.

2

The Department of Homeland Security (the "DHS") referred Chen's asylum application to an immigration judge (the "IJ") and commenced removal proceedings against both petitioners by issuing separate Notices to Appear. The notices charged the petitioners with removability as aliens present in this country without being admitted or paroled. The petitioners each conceded before the IJ that they were removable as charged and renewed their requests for relief. While Chen's application was pending, Zeng submitted his own application for asylum and withholding of removal, listing Chen as a derivative beneficiary. *See* A.R. 4520-30. Following a hearing on the merits, the IJ granted Chen's application for asylum and withholding of removal on February 16, 2007. *See id.* at 3701-12. That award extended to Zeng, as Chen's spouse and derivative beneficiary. *See id.*; *see also* 8 U.S.C. § 1158(b)(3); 8 C.F.R. § 208.21.

During the following month, the DHS appealed the IJ's ruling in favor of the petitioners. *See* A.R. 3696-98. The DHS contended on appeal that reports from the State Department concerning country conditions in China and recent precedents from the BIA rendered inappropriate the relief awarded to the petitioners. The petitioners opposed the appeal and requested that the BIA remand for the IJ to first consider any new and previously unavailable rebuttal evidence. On November 13, 2008, the BIA granted the petitioners' motion to remand and returned the matter to the IJ for further proceedings.

Nearly two years later, on November 9, 2010, the IJ issued a new decision that denied the petitioners' applications for relief. *See* A.R. 1466-78. Although the IJ found Chen credible, she concluded that Chen had failed to establish a well-founded fear of future persecution in China. The IJ determined that Chen's claims were identical to other

3

claims previously rejected by the BIA in earlier published decisions. The IJ also considered new evidence submitted by the petitioners but found that it was not as persuasive as the State Department reports on conditions in China already of record. According to the IJ, those reports showed that the petitioners would not be subjected to persecution on account of their two American-born children. *See id*. at 1475-76. Relying on those reports, the IJ denied the petitioners' applications for asylum. The IJ likewise determined that they failed to satisfy the higher burden of proving eligibility for withholding of removal. Lastly, the IJ denied the petitioners' requests for protection under the Convention Against Torture (the "CAT"). The IJ thus ordered both petitioners removed to China.

The petitioners appealed the IJ's 2010 decision to the BIA. While their appeal was pending, they filed another motion to remand, claiming that they had begun practicing Christianity and would be persecuted on that basis if returned to China. *See* A.R. 1294-96. On December 14, 2012, the BIA dismissed the petitioners' appeal and denied their motion to remand. *See id*. at 982-86. On the merits, the BIA agreed with the IJ that the petitioners could not satisfy their burden of establishing a well-founded fear of persecution in China. The BIA identified no clear error in the IJ's determination that the petitioners did not face a reasonable possibility of being subjected to forced sterilization or excessive fines for having had children without permission while in the United States. The BIA therefore upheld the IJ's order of removal.

With respect to the petitioners' motion to remand, the BIA found that they failed to make a prima facie showing of a well-founded fear of persecution on account of

4

religion. The BIA emphasized that the petitioners had not submitted any documents suggesting that the Chinese authorities were aware of, or would likely be aware of, their religious activities upon their return to China or mistreat them on account of those activities. Assuming the Chinese authorities knew about the petitioners' religious practices in the United States, however, the BIA reasoned that "aliens are not permitted to manufacture new asylum claims by changing their personal circumstances." *See* A.R. 985. In July 2013, this Court denied the petitioners' subsequent petition for review, determining that substantial evidence supported the BIA's decision on the merits and that the BIA had not abused its discretion in denying the motion to remand. *See Ming Fang Chen v. Holder*, 533 F. App'x 269 (4th Cir. 2013).

On December 30, 2013, the petitioners filed with the BIA a motion to reopen their removal proceedings, alleging that the relevant country conditions in China had materially changed. *See* A.R. 612-24. The petitioners explained that they had been baptized in the True Jesus Church in August 2013, and claimed that conditions for unregistered Christians in China had deteriorated since their 2010 IJ hearing. They also claimed to have discovered new evidence, which showed that China "mandate[d] sterilization for Chinese citizens living abroad" who had "giv[en] birth to two children." *See id.* at 613, 621.

On May 22, 2014, the BIA denied the petitioners' motion to reopen as untimely, in that the motion was filed more than ninety days after the BIA's entry of a final administrative order. *See* A.R. 604-08. In its denial, however, the BIA recognized that there is no time limit for a motion to reopen if it seeks relief based on changed country

conditions and "such evidence is material and was not available and could not have been discovered or presented at the previous hearing." *See* 8 C.F.R. § 1003.2(c)(3)(ii). Nevertheless, the BIA determined that the petitioners failed to demonstrate that the exception applied. The BIA explained that "the mistreatment of underground church members by the Chinese government has been a longstanding problem, including [at] the time of [the petitioners'] 2010 hearing." *See* A.R. 607. The BIA concluded that the petitioners failed to demonstrate a material change in conditions with respect to the treatment of underground church members in China. In making that conclusion, the BIA evaluated the petitioners' various submissions, including unsworn written statements from their relatives. Those statements related that their relatives in China had been briefly detained, questioned, and fined for attending illegal religious gatherings. The BIA, however, deemed those statements to be of "unknown reliability" and not of "sufficient evidentiary worth" to support reopening the removal proceedings. *See id.* at 607. The BIA also ruled that the petitioners had not established any prima facie eligibility for relief because their evidence failed to show a well-founded fear of persecution based on their practice of Christianity or membership in the True Jesus Church.

Accordingly, the BIA ruled that the petitioners failed to qualify for the changed country conditions exception to the ninety-day time limit for reopening removal proceedings. The BIA thus denied the motion to reopen as untimely. In April 2015, this Court denied the petitioners' request for review of that decision, specifying that the BIA

6

had not abused its discretion in denying the motion to reopen. *See Ming Fang Chen v. Holder*, 599 F. App'x 97 (4th Cir. 2015).

B.

On March 23, 2017, the petitioners filed the motion to reopen that underlies this proceeding — their second such motion — again based on a claim of changed country conditions in China. *See* A.R. 13-34 (the "Second Motion"). The petitioners therein claimed that those changes "include, but are not limited to, recently enacted policies with expanded powers and tighter restrictions against religious freedom, harsher enforcement against unregistered Christians, and more systematic crackdowns, demonstrated by a statistical showing of an exponential increase in the number of Christians persecuted." *See* Second Motion 3. Based on those allegations, the Second Motion sought to reopen and renew requests for asylum, withholding of removal, and protection under the CAT.

In support of the Second Motion, the petitioners submitted: (1) an updated asylum application and personal statement; (2) copies of birth, marriage, and baptism certificates, their Chinese passports, and photos of their activities in church; and (3) numerous articles and country reports describing conditions for Chinese Christians between 2010 and 2017. Those articles and country reports included, inter alia, the 2015 and 2016 annual reports by the U.S. Commission on International Religious Freedom (the "IRF"), an independent, nonpartisan government entity. The petitioners also submitted a 2017 report by the nongovernmental organization Freedom House. *See* A.R. 456, 506, 574.

The two IRF reports and the Freedom House report confirmed that, since 2014, the Chinese government has increased its efforts to crack down on unsanctioned religious

7

practices. The 2015 IRF report described the demolition of approximately 400 Christian churches in China in 2014, although it observed that "[m]ost of these incidents occurred in Zhejiang Province." *See id*. at 458. The 2016 IRF report identified an additional 1500 Christian churches that were demolished in China in 2015, although it again observed that most of them were in Zhejiang province. *See id*. at 508. Lastly, the 2017 Freedom House report estimated that about 70 million Chinese continue to practice Christianity in China, about 29 million of whom worship in unregistered Protestant churches. *See id*. at 579. Although the Freedom House report confirmed that the greatest repression of Chinese Christians has occurred in Zhejiang province, it described a widespread increase in government interference with the practice of Christianity in China, including in the petitioners' native Fujian province. At the same time, however, the reports documented that official tolerance of Christians varies regionally. *See* A.R. 458, 591.

On May 19, 2017, the BIA denied the Second Motion. *See* A.R. 3-6. In so ruling, the BIA first observed that the motion was untimely and an impermissible successive request for relief. The BIA then determined that the petitioners had failed to show that the exception authorizing a reopening based on changed country conditions applied to their Second Motion. The BIA concluded that the evidence submitted by the petitioners regarding past and current conditions faced by Christians in China was not sufficient to demonstrate a material change since the 2010 IJ proceedings. The BIA explained that the "evidence reflects that there continue to be reports of harassment of some Christian church members in China, that some church members, mostly leaders, of underground churches have been detained, and that some religious activities continue to be restricted."

8

*See id*. at 4.  The BIA emphasized that interference by the government with unregistered churches and the harassment of some church members is a "longstanding concern, including at the time of [the petitioners'] 2007 and 2010 removal proceedings." *See id*. at 5.  Further, the BIA recognized that government restrictions on underground churches vary significantly from region to region within China.

Based on that analysis, the BIA also concluded that the petitioners had failed to establish their prima facie eligibility for asylum or withholding of removal such that a reopening was warranted.  Lastly, the BIA ruled that the petitioners had failed to demonstrate that it is more likely than not that they will be tortured if returned to China.  The BIA thus found no basis for a remand and denied the Second Motion.

The petitioners thereafter filed this petition for review.  We initially scheduled oral argument, but the argument was continued.  We thereafter advised the parties that the petition would be decided on the briefs.  We possess jurisdiction under 8 U.S.C. § 1252(a).

## II.

This Court reviews for abuse of discretion the BIA's denial of a motion to reopen.  *See* 8 C.F.R. § 1003.2(a); *INS v. Doherty*, 502 U.S. 314, 323-24 (1992); *Mosere v. Mukasey*, 552 F.3d 397, 400 (4th Cir. 2009).  The BIA's "denial of a motion to reopen is reviewed with extreme deference, given that motions to reopen are disfavored because every delay works to the advantage of the deportable alien who wishes merely to remain in the United States."  *Sadhvani v. Holder,* 596 F.3d 180, 182 (4th Cir. 2009) (internal

9

quotation marks omitted). Accordingly, we will reverse the BIA's denial of a motion to reopen only when it is "arbitrary, irrational, or contrary to law." *See Mosere*, 552 F.3d at 400.

## III.

The BIA denied the petitioners' Second Motion for two reasons. First, it ruled that the petitioners had failed to demonstrate changed country conditions in China that were sufficient to warrant a reopening of their removal proceedings. Second, the BIA determined that the petitioners had not established their prima facie eligibility for asylum, withholding of deportation, or protection under CAT. Those two reasons constitute separate grounds for denying the relief sought by the petitioners. Because we agree with the BIA that the petitioners have not demonstrated their prima facie eligibility for relief, we affirm the BIA solely on that basis and deny the petition for review.

## A.

Generally, an alien may file only one motion to reopen removal proceedings and must do so within ninety days of a final order of removal. *See* 8 U.S.C. § 1229a(c)(7)(A), (C); 8 C.F.R. § 1003.2(c)(2). Those temporal and numerical limits do not apply, however, if the motion to reopen is based on "changed country conditions," and if evidence of the alleged changes "is material and was not available and would not have been discovered or presented at the previous proceeding." *See* 8 U.S.C. § 1229a(c)(7)(C)(ii); 8 C.F.R. § 1003.2(c)(3)(ii).

10

Pursuant to the applicable regulations, in order to qualify for the changed country conditions exception, a motion to reopen "shall state the new facts that will be proven at a hearing to be held if the motion is granted and shall be supported by affidavits or other evidentiary material." *See* 8 C.F.R. § 1003.2(c)(1). And a motion to reopen "shall not be granted unless it appears to the [BIA] that evidence sought to be offered is material and was not available and could not have been discovered or presented at the former hearing." *See id.* The alien seeking relief bears the burden of establishing that the relevant country conditions have materially changed since his original removal proceedings. *See Wanrong Lin v. Holder*, 771 F.3d 177, 185 (4th Cir. 2014).

We recognize three independent grounds on which the BIA may properly deny a motion to reopen removal proceedings: "(1) the alien has not established a prima facie case for the underlying substantive relief sought; (2) the alien has not introduced previously unavailable, material evidence; and (3) where relief is discretionary, the alien would not be entitled to the discretionary grant of relief." *Onyeme v. INS*, 146 F.3d 227, 234 (4th Cir. 1998) (citing *INS v. Abudu*, 485 U.S. 94, 104-05 (1988)). In these proceedings, the BIA invoked the first and second of those grounds. It first determined that the petitioners had not introduced new evidence demonstrating a material change in country conditions for Christians in China. The BIA also ruled that the petitioners had not made a prima facie case for relief. Because those two rationales are independent, we can affirm on either ground.

B.

With regard to the BIA's determination that the petitioners failed to demonstrate materially changed country conditions for Christians in China, we are troubled by the BIA's peremptory rejection of the petitioners' evidence. In language nearly identical to its denial of the petitioners' 2013 motion to reopen, the BIA rejected the claim of changed country conditions made in the Second Motion by simply noting that "government interference in unregistered churches and harassment of some underground church members by the Chinese government has been a longstanding concern." *See* A.R. 5. The BIA supported that conclusion with IRF reports made between 2009 and 2012, and with a 2014 decision of this Court. *See id*. at 4-5 (citing, e.g., *Ai Hua Chen v. Holder*, 742 F.3d 171, 183-84 (4th Cir. 2014)). But the BIA failed to address more recent reports and articles submitted by the petitioners, many of which confirmed that the oppression of Chinese Christians began to worsen in 2014. *See, e.g.*, *id*. at 456.

Although our review of the BIA's factual determinations is a deferential one, it is not an empty gesture. In reviewing for abuse of discretion, it is "our responsibility to ensure that unrebutted, legally significant evidence is not arbitrarily ignored." *See Baharon v. Holder*, 588 F.3d 228, 233 (4th Cir. 2009). And the BIA will have abused its discretion if it fails "to offer a reasoned explanation for its decision," or if it distorts or disregards important aspects of the petitioners' claim. *See Tassi v. Holder*, 660 F.3d 710, 719 (4th Cir. 2011). Moreover, the BIA "may not selectively consider evidence," and it should not ignore evidence that corroborates an alien's claims and "calls into question the conclusion the judge is attempting to reach." *See Ai Hua Chen*, 742 F.3d at 179. To

12

prevent a skewed review by the BIA, we require it to "offer a specific, cogent reason for rejecting evidence, whether testimonial or documentary." *See Tassi*, 660 F.3d at 720.

Here, the BIA gave no justification for ignoring the most recent reports and articles on Chinese Christians submitted by the petitioners, which documented increasing pressure imposed on Christians by the Chinese government. Although the petitioners had submitted evidence of worsening conditions for Christians in China from 2014 to the present, the BIA failed to address that evidence or explain why it relied only on evidence from 2014 and earlier. In similar circumstances, the Tenth Circuit recently ruled that the BIA "abused its discretion by holding, completely contrary to all of the evidence, that [the petitioner] had not shown that the treatment of Christians in China has worsened in recent years." *See Liying Qiu v. Sessions*, 870 F.3d 1200, 1204 (10th Cir. 2017). In that decision, the court relied on some of the same reports submitted by the petitioners in this proceeding, including the 2015 IRF report. *See id.* at 1202-03.

Moreover, our sister courts of appeals in the Second, Seventh, Ninth, Tenth, and Eleventh Circuits have also recognized that a significant increase in the level of persecution faced by an alien in her home country will constitute a material change in country conditions for purposes of a motion to reopen under 8 U.S.C. § 1229a(c)(7)(C). *See Liying Qiu*, 870 F.3d at 1204 (collecting decisions); *see also Chandra v. Holder*, 751 F.3d 1034, 1039 (9th Cir. 2014) (sustaining claim based on worsening conditions for Christians in Indonesia); *Shu Han Liu v. Holder*, 718 F.3d 706, 709, 713 (7th Cir. 2013) (sustaining claim based on worsening conditions for Christians in China); *Jiang v. U.S. Attorney Gen.*, 568 F.3d 1252, 1258 (11th Cir. 2009) (sustaining claim based on

13

increased enforcement of family planning policies in China); *Paul v. Gonzales*, 444 F.3d 148, 157 (2d Cir. 2006) (sustaining claim based on worsening conditions for Christians in Pakistan). The BIA's assertion that the Chinese government's persecution of Christians is "longstanding" and "continu[ing]" does not preclude a claim that those conditions have materially worsened. *See* A.R. 4-5. Accordingly, we are unable to affirm the BIA's rejection of the Second Motion on the basis of its flawed assessment of the country conditions for Christians in China.

C.

Notwithstanding our disagreement with the BIA's analysis regarding the treatment of Christians in China, we will nevertheless affirm its denial of the Second Motion. That is, we agree with the BIA that the petitioners have not made a prima facie case for either asylum, withholding of removal, or protection under CAT.

The petitioners had the burden of demonstrating their prima facie eligibility for relief; that is, they were required to demonstrate that their new evidence would likely alter the result of their earlier removal proceedings. *See Onyeme*, 146 F.3d at 234. On their asylum claim, the petitioners were obliged to establish a well-founded fear of persecution in China based on a protected ground, such as religion. *See* 8 C.F.R. § 1208.13(b).[2] To do so, they had to provide the BIA with "specific, concrete facts that

---

[2] The petitioners do not assert that they have suffered from past persecution in China, which would somewhat alter the analysis herein. *See* 8 C.F.R. § 208.13(b)(1).

14

would lead a reasonable person *in like circumstances* to fear persecution." *See Ngarurih v. Ashcroft*, 371 F.3d 182, 187 (4th Cir. 2004) (emphasis added).

Put simply, the BIA did not abuse its discretion in concluding that the petitioners failed to demonstrate a sufficiently specific risk of future persecution. This Court has previously required that an alien seeking asylum show a risk of persecution specific to that alien's circumstances. For example, in *Ai Hua Chen* in 2014, we looked for evidence that Christians in Chen's native province were persecuted by the Chinese government. *See* 742 F.3d at 183-84. As in *Chen*, these petitioners have not produced evidence likely to establish that they would be persecuted if returned to their native Fujian province. Although the petitioners have shown an uptick in the Chinese government's repression of practicing Christians, the evidence also shows that such repression varies significantly by region, and that millions of Chinese Christians practice their faith relatively undisturbed. In such circumstances, we cannot say that the BIA's rejection of the petitioners' claims was either "arbitrary" or "irrational," and we cannot disturb the BIA's decision. *See Mosere*, 552 F.3d at 400.

Because the petitioners have failed to establish their prima facie eligibility for asylum, they likewise fail to establish eligibility for withholding of removal pursuant to 8 U.S.C. § 1231(b)(3). As we have explained, "[b]ecause the burden of proof for withholding of removal is higher than for asylum — even though the facts that must be proved are the same — an applicant who is ineligible for asylum is necessarily ineligible for withholding of removal under § 1231(b)(3)." *See Camara v. Ashcroft*, 378 F.3d 361, 367 (4th Cir. 2004).

15

Similarly, the petitioners' claim for protection under CAT is predicated on the same facts and claims as their other requests for relief. To be eligible for CAT relief, the petitioners must show "that it is more likely than not" that they "would be tortured if removed to the proposed country of removal." *See* 8 C.F.R. § 208.16(c)(2). On this record, and for the reasons underlying our rejection of the asylum claim, we cannot say that the BIA erred in ruling that the petitioners failed to satisfy their burden on the CAT claim.

## IV.

Pursuant to the foregoing, we deny the petition for review.

*PETITION FOR REVIEW DENIED*